CHEGARAY *against* THE MAYOR, &c., OF NEW YORK.

A building erected for the use of and occupied as a private boarding school is not exempt from taxation by the statute (1 *R. S.*, 388, § 4), exempting every school-house and every building erected for the use of a college, incorporated academy or other seminary of learning.

The school-houses referred to in this statute, are those used for the public common schools.

Buildings erected and used for private unincorporated seminaries of learning, are not exempt from taxation.

The dictum of Ruggles, J., in Chegaray v. Jenkins (5 N. Y. 376), overruled; and Chegaray v. Mayor, &c., of New York, 2 Duer, 521, reversed.

*ACTION in the superior court of the city of New York to recover the amount of certain taxes assessed upon premises occupied by the plaintiff and collected by a seizure and sale of her property, on the ground that such premises were exempt from taxation. The case of *Chegaray* v. *Jenkins* (1 *Seld.* 376), was brought to recover for the collection of the same taxes in controversy in this suit.

On the trial of this action before Mr. Justice Paine, in December, 1852, the following facts were admitted: The premises and building thereon upon which the taxes were assessed, are situate in the eighteenth ward in the city of New-York, and are designated as Nos. 14, 16 and 18, Union Place. This building was erected and completed for the purpose of being used and occupied by the plaintiff as a school, and it could not appropriately be used for any other purpose without alterations at a heavy expense. The plaintiff, at the time the taxes were assessed and collected and from the time the building was completed, occupied it as a boarding and day school for girls, by virtue of a lease from the owner of the premises. The school was a large one, and some of the teachers and pupils were boarded and lodged in the building. It was originally intended for three dwelling-houses, but soon after the foundations were laid, an arrangement was made between the plaintiff and

the owner in accordance with which the plan was altered and the building was erected and completed for the purpose of accommodating and being used for her school.

The assessors of the ward for the years 1846, 1847, 1848, 1849 and 1850, assessed a tax of about $400 for each year upon the premises. The assessments were severally duly confirmed by the board of supervisors of the city and county of New York, and the tax not having been paid, a warrant was issued for the tax of each year to the proper officer, commanding him to collect the same of the plaintiff. The officer, by virtue of such warrants, collected the amount of the taxes by a seizure and sale of the plaintiff's property *and "paid over the same according to law and not otherwise." [*222

The court ordered a verdict in favor of the plaintiff for the amount of the taxes, subject to the opinion of the court at a general term upon a case, with leave to either party to turn the same into a bill of exceptions, and a verdict was rendered accordingly. The court rendered judgment on the case in favor of the plaintiff for the amount of the taxes. (*See* 2 *Duer*, 521, for a report of the decision of the superior court, and a more particular statement of the facts.) The defendant caused the case to be turned into a bill of exceptions, showing that upon the facts, the court charged the jury that the plaintiff was entitled to recover and that the counsel for the defendant excepted. After judgment by the court at general term, the defendants appealed to this court.

*Robert J. Dillon*, for the appellants.

I. The premises occupied by the plaintiff were not exempt from taxation: 1. It was not a *public* establishment. Every building mentioned in the third class of exemptions, is a public building, except a "seminary of learning" and "school-house," and upon the principle in the construction of statutes, *noscitur a sociis*, they must be public, otherwise they are exempt (1 *R. S.*, 388; *Chegaray* v. *Jenkins*, 3 *Sandf.*, 409); 2. No "seminary of learning" is exempt

unless the building was erected for such, that is, for a seminary of learning exclusively, and for its permanent use as such. The buildings in question were erected for private investment and were built in the usual manner of dwelling-houses and to be used as such with alterations, after the lease of plaintiff should expire; 3. If the exemption embraces a private "seminary of learning," then it •follows that if it were originally erected for such, it would be forever thereafter exempt from taxation, although it might at any time afterwards cease to be used as such; 4. It is not a *"school-house" in the usual and ordinary significa-

*223]  tion of the word, but a house for the twofold purposes of boarding and education, private and exclusive; 5. The exemption applies only to such buildings as shall be erected for the exclusive use of education. By reference to the circular it will be seen that the larger part of plaintiff's revenue was derived from boarding her pupils, and that only a small part of the building was used for education. Is every building, no matter how occupied, in which any part is used for education, "a seminary of learning" or "a school-house?" And if not, how much of it must be thus occupied? 6. The opinion of Ruggles, C. J., in *Chegaray* v. *Jenkins* (1 *Seld.*, 376), is not the opinion of the court, and must be considered *obiter dicta*.

II. This is not an action of trespass or for damages for the tort, but an action for money had and received upon an implied contract, and cannot be sustained: 1. Because it is brought for the purpose of trying the title or validity of a tax. That form of action was not intended and has never been sanctioned in this state for such a purpose. (*Moses* v. *Macferlan*, 2 *Burr.* 1005, 1012; *Dale* v. *Sollet*, 4 *Burr.* 2133; *Linden* v. *Hooper*, 1 *Cowp.*, 414.) The cases in Massachusetts are peculiar to that state. In these the action was trespass. (5 *Pick.*, 498; 21 *Pick.*, 382.) In these no objection was taken to the form of the action (17 *Mass.*, 461; 12 *Pick.*, 7; 4 *Metc.*, 182; 5 *Metc.*, 74; 1 *Metc.*, 242.) 2. Because the remedy of the plaintiff was by an application

for review to the assessors or to the supervisors, as specially provided by statute, or by certiorari, or by mandamus, or by trespass against the supervisors who issued the warrant, or against the assessors who commenced the wrong. (*Chegaray* v. *Jenkins*, 1 *Seld.*, 376; 1 *R. S.*, 393, § 2; *Act of 1844*, 384; *Act of 1850*, *ch.* 121, §§ 18, 28; *Act of 1851*, *ch.* 319, § 3; 4 *Comstock*, 449.) *By certiorari* (*Storm* v. *Odell*, 2 *Wend.* 287; *Caledonian Co.* v. *Trustees*, 7 *Wend.*, 508; *ib.* 486; *People* v. *Brooklyn*, 9 *Barb.*, 535.) *By prohibition* (*People* v. * *Works*, 7 *Wend.*, 486.) *By mandamus* (*People* v. *Albany*, 12 *J. R.* 414; *Ex parte Nelson*, 1 *Cow.*, 417; *Hull* v. [*224 *Oneida*, 19 *J. R.*, 260; *Brigat* v. *Chenango*, 18 *J. R.*, 242; *People* v. *New York*, 10 *Wend.*, 393; *Bank of Utica* v. *City of Utica*, 4 *Paige*, 400; *People* v. *New York*, 18 *Wend.*, 605; *People* v. *Watertown*, 1 *Hill*, 616; *People* v. *Niagara*, 4 *Hill*, 20). *By trespass against assessors and supervisors* (*Sanders* v. *Springsteen*, 4 *Wend.*, 429; *Ontario Bk.* v. *Bunnell*, 10 *Wend.*, 186; *Weaver* v. *Davendorf*, 3 *Denio*, 117; *Prosser* v. *Secor*, 5 *Barb.*, 607).

3. Because it is an attempt to review and reverse the judgment of the tribunal of assessors in a collateral action, which cannot be done, either directly or indirectly. It is allowable for the plaintiff in an action of trespass for the wrong done under a judgment, pleaded by the defendant in justification, to show that it is void. But to waive the tort and sue for the money collected, is to admit the validity of the judgment. This is especially true if the action is not brought against the person who executed the judgment or authorized its execution. The multitude of cases arising in the city of New York, show the importance of adhering rigidly to this rule of law. If parties complaining of the action of the numerous subordinate tribunals, are compelled to apply to the supreme court for review, then if the judgment be set aside, new proceedings can be taken before the same tribunals to levy the tax, assessment, &c. If, however, this action can be maintained, then there is no mode of reimbursing the public treasury for the amount repaid. By taking away a portion of the property supposed to be liable

to taxation, and upon which the rate is declared, it disturbs irremediably the entire proceedings and defeats the realizing of the amount required for the public service. (*U. S. Digest, tit. Certiorari*, 491; *Moers* v. *Smedley*, 6 *J. C. R.*, 28; *Mayor* v. *Meserole*, 26 *Wend.*, 132; *Wiggins* v. *Mayor*, 9 *Paige*, 16, 24; *Van Doren* v. *Mayor*, *Ib.*, 388; *Benton* v. *Brooklyn*, 7 *Howard*, 205; *Livingston* v. *Hollenbeck*, 4 *Barb.*, 10–17; *Douglas* v. *Mayor*, *Duer*, *J.*; *Society Library* v. *Mayor*, *Emmet*, *225]* *J.*; *Thwing* v. *Mayor*, *Roosevelt*, *J.*; *Trinity Church* v. *Mayor*, *Ib.*; *N. Y. Life Ins. Co.* v. *Mayor*, *Superior Ct.*, *General Term*; *N. Y. City Ins. Co.* v. *Mayor*, *Ib.*; *Wilson* v. *Mayor*, *Woodruff*, *J.*; *Chemical Bank* v. *Mayor*, *Mitchell*, *J.*)

The following cases are not authority against this proposition, because in them the objection was not taken: (*Contenix* v. *Erie*, 7 *Barb.*, 249; *Mutual Co.* v. *Erie*, 4 *Comst.*, 442; *Bank of Utica* v. *City of Utica*, 4 *Paige*, 399; *Farmers* v. *New-York*, 7 *Hill*, 261; *Utica Co.* v. *Supervisors*, 1 *Barb. C. R.*, 432; *Boreel* v. *Mayor*, 2 *Sandf.*, 552; *Sun Co.* v. *Mayor*, 8 *Barb.*, 450; *Albany Co.* v. *Osborn*, 12 *Barb.*, 223.)

III. The plaintiff resided and the property was situated within the jurisdiction of the assessors, tax commissioners and boards of supervisors. They acted judicially in determining that the property was not exempt. Every inhabitant and every owner of property within the city is, in law, a party to the proceedings. Their judgment, though erroneous, is conclusive, until it is reversed, which can be done only upon certiorari. It is believed that no case can be cited, in which these two requisites of jurisdiction have existed, deciding that their action was not judicial. Otherwise, as in this case, the assessors are personally liable for the exercise of their judgment, in which the entire bench of the superior court has concurred. (*Weaver* v. *Devendorf*, 3 *Denio*, 117; 10 *Wend.*, 47; *Van Rensselaer* v. *Cottrell*, 7 *Barb.*, 127; *Van Rensselaer* v. *Whitbeck*, 7 *Barb.*, 138; *Sheldon* v. *Van Buskirk*, 2 *Comst.*, 473; *Osborne* v. *Danvers*, 6 *Pick.*, 98; *Chegaray* v. *Jenkins*, 1 *Seld.*, 381; *Thwing* v.

*Mayor, Roosevelt, J.; Trinity Church* v. *Mayor, ib.; Society Library* v. *Mayor, ib.; People* v. *Chenango,* 1 *Kernan,* 563.) Even though exemption or not be a jurisdictional fact, yet both the person and the subject-matter being within the jurisdiction of the assessors, the question of its exemption was one upon which they must necessarily pass; and their decision upon it is conclusive, until reversed by certiorari, *prohibition, &c. (Cowen & Hill's Notes to Phillips, and cases there cited,* 2, 171, 172, 209–216.) [*226

IV. The case shows no cause of action against the defendants: 1. No act was done or authorized by the defendants in the assessment, confirmation or collection of the tax; 2. The allegations in the complaint that the defendants issued the warrant to Jenkins and that he paid the money to the defendants, if not denied by the answer, were intended by the plaintiff and understood by the defendants as conclusions of law, and not as averments of the fact. The answer asserts that "the taxes were laid in all respects according to law, and that they were duly confirmed and enforced." The plaintiff on the trial, by the stipulation, expressly admitted that the warrant was issued by the supervisors to the receiver and by him to the constable, and that the money was paid over by the constable according to law and not otherwise. It is manifest that it was the intention of both parties to try the case upon the facts agreed upon by the stipulation, and that the liability of the defendants was a main point of the contest; 3. There is no relation of master and servant, or of principal and agent existing between the corporation and the persons authorized to assess, confirm or collect the taxes. Unless such relation exists, the defendants, the corporation, is not liable in cases like the present. They do not fix the amount to be raised by taxation; the authority is granted by the annual tax law of the state. (*Vide the act of* 1855, 221, *as an example.*) Nor is the authority granted to the defendants, but to the supervisors. Nor do they assess the

taxes; taxes are assessed by assessors elected by the people, and confirmed by the board of supervisors, over whom the defendants have no control. Nor are the taxes assessed for their benefit alone; they are assessed for county and state purposes. The amount of the former is not easily ascertained; that of the latter exceeds $700,000 a year, embracing the mill and school tax. The corporation does not \*227] *receive the taxes after they are collected; they are paid to the chamberlain, as the treasurer of the county, who pays over to the comptroller of the state so much as are state taxes and disburses the residue, partly upon the warrants of the supervisors, for county purposes, and partly upon the warrants of the corporation, for city purposes. The defendants have no control of the funds for their own purposes, as a corporation, but only for such purposes of municipal government as shall be expressly authorized by the annual act. They can neither direct what property shall be assessed nor what shall be relieved, such power belongs to the supervisors; nor can they direct what shall be paid into the hands of the chamberlain, nor what he shall reject. It is true some of these officers are corporate officers; but they do not act as such, nor are their acts corporate acts. The defendants do nothing in the collection of the taxes, except as the agents of the state, for the purposes of local government, and in aid of the finances of the state. (*Act of* 1813, *vol.* 2, 399, §§ 150, 151, 152, 155; 1 *R. S.*, 684, *4th ed.*, § 49; *ib.*, 714, *ch.* 13; *ib.* 729, §§ 35, 36; *ib.*, 671, § 1; *ib.*, 762, § 13; *ib.*, 763, 766; *Act of* 1843, 314; *ib.*, 1849, 281; *ib.*, 1850, *ch.* 121, 188; *Angell & Ames*, § 30 *to* 36; *Martin* v. *Mayor*, 1 *Hill*, 545; *Wilson* v. *Mayor*, 1 *Denio*, 595; *Bailey* v. *Mayor*, 3 *Hill*, 531; 2 *Denio*, 434; *Lorillard* v. *Town of Monroe*, 1 *Kernan*, 392; *People* v. *Edwards*, 15 *Barb.*, 529.) In the cases in Massachusetts, brought against towns and cities, this objection was not taken or did not apply, and therefore they are not authorities against this point.

*T. U. Tucker*, for the respondent.

I. The building occupied by the respondent at the times of the several assessments and levied above mentioned, was " erected for the use of a seminary of learning," and was exempt from taxation. (*Chegaray* v. *Jenkins*, 1 *Seld. R.*, 376.)

*II. These taxes, illegally assessed, having been [*228 collected from the property of the respondent by com- pulsory process, and paid into the city treasury, the appel- lants are liable, in an action for money had and received, to refund the several amounts collected, with interest. (*Preston* v. *City of Boston*, 12 *Pick. Rep.*, 7 ; *The Boston Sandwich Glass Co.* v. *City of Boston*, 4 *Metcalf Rep.*, 181; *Jaynes* v. *The Inhabit- ants of School District No. 3 in Egremont*, 3 *Cush. R.*, 567 ; *Ses- sion Laws of* 1843, 314, *article* I., §§ 2, 3, 4, 7, 8; *article* II., §§ 1, 2, *and* 3 ; *Laws relative to the city of New-York*, *Davies edition*, 172 *to* 174, 206 *to* 208.) The statute having de- clared that the building of the respondent was exempt from taxation, neither the assessors or supervisors had any jurisdiction either to impose or confirm the assessment of these taxes. Their acts and determinations were nullities, and constitute no bar to the respondent's recovery in this action. (*Prosser* v. *Secor*, 5 *Barb. S. C. R.*, 611; *The People* v. *The Supervisors of Chenango*, 1 *Kernan R.*, 572; *Mills* v. *Martin*, 19 *John. R.*, 33 ; *Bloom* v. *Burdick*, 1 *Hill R.*, 130 ; *Whitney* v. *Shufelt*, 1 *Denio R.*, 592 *to* 595 ; *Burckle* v. *Eckart*, 3 *Denio R.*, 282 ; *Walker* v. *Moseley*, 5 *Denio R.*, 102.) Their jurisdiction may be inquired into in any court where their proceedings are brought by a party claiming the benefit of them. (*The Chemung Canal Bank* v. *Judson*, 4 *Selden R.*, 254; *Chegaray* v. *Jenkins*, 1 *Selden R.*, 376 ; *Latham* v. *Edgerton*, 9 *Cowen R.*, 229 ; *Delafield* v. *State of Illinois*, 2 *Hill R.*, 159.)

HAND, J. The statute in relation to the exemption of property from taxation, among other things, exempts " every building erected for the use of a college, incorporated

academy or other seminary of learning, every building for public worship, every school-house, court-house and jail; and the several lots whereon such buildings are situated, and the furniture belonging to them." (1 *R. S.*, 388, § 4.) The houses which the plaintiff occupies stand upon three *229] *lots; but were so constructed as to be used as one building, and may be said to have been erected for her school, and she became the lessee and has ever since kept therein a boarding and day school for girls. The property, however, is not exempt from the payment of taxes. Not as a "school-house," for the use of that word is familiar in this state, and its meaning in our school laws cannot well be mistaken, and we cannot suppose it was here used in a different sense. It is the building provided for the use of our public common schools.

It is said the word "seminary" is sufficiently broad to include the schools of the plaintiff, and consequently the houses in question. The word "seminary" has not acquired any definite and fixed legal meaning, though occasionally used in a general way to designate institutions for the promotion of learning. (*See* 1 *Woodd.*, 474; *Dartmouth Coll. case*, 4 *Wheat.*, 518.) *Seminarium* is found in Cowell, but has no reference to schools. In this section the words "or other seminary of learning" are preceded by "college, incorporated academy;" and the position of the former in the sentence, I think precludes the idea of any property except that of corporations. By "college," clearly a corporation was intended. Not that the term *ex vi termini* implies a corporate body. Schools and various kinds of associations have sometimes received that appellation, at least by reputation and without a charter. (4 *Co.*, 107, 108; *in re Manchester College*, 19 *Eng. L. & E. R.*, 404, *Landewibrevye College case*, 3 *Dy.*, 267; 2 *Lev.*, 15.) But that is not the present and ordinary signification of the the word. (*See* 2 *Kent*, 270; *Toml. Dic.*, "*College*;" *Ang. & A. on Corp.*, 43; *Wood's Inst.*, 113; *Holt*, 143; 4 *Vin.*, 552.) Our statutes in relation to public instruction refer

to them as incorporations. (1 *R. S.*, 460, 461, § 37.) All the institutions then mentioned in this sentence, which precede the words " or other seminary," being corporations, it follows that it was intended these seminaries *should also be incorporated; within the rule that general words following particular words apply only to things *ejusdem generis.* (*Rex* v. *Manchester and Salford Water Co.*, 1 *B. & C.*, 630; *Casher* v. *Holmes*, 2 *B. & Ad.*, 592; *East Lond. Water Works* v. *Mile End Town*, 17 *Q. B.*, 512; 7 *B. & C.*, 96.) And the words " seminary" and " seminaries" are used· in several other places in our statutes in relation to public instruction, and in every case, I believe, refer to a corporation. (*See* 1 *R. S.*, 458, §§ 23, 24, 25; 459, §§ 26, 27, 28, 29; 461, §§ 36, 37.) Provision is made for the incorporation of schools other than those usually denominated colleges and academies. (1 *R. S.*, 464, § 57, *et seq.*) And many have been incorporated by special acts, and under particular names; but all the property belonging to such schools, as well as to academies, immediately upon their being incorporated becomes vested in the trustees for the use and benefit of· the school. (1 *R. S.*, 462, §§ 40, 41; *ib.*, 465, §§ 61, 62; *Laws of* 1835, *ch.* 34, § 3.) It is evident that it was intended to exempt only property used by the public for the purposes of education, or which belonged to a corporation created for the advancement of learning, and thereby devoted to educational purposes. And it may be remarked that it is not the college, academy or seminary ·that is exempt, but " every building erected for the use" of these institutions; thereby implying that the words "college" and " seminary," as well as " incorporated academy," were here used to express some legal entity. And this is the only reasonable construction. By that contended for by the plaintiff, any person might build a school-room and establish a private school in his house, and thereby exempt the building and the lot from taxation; and, by liberal construction, every house in which a private boarding school should be kept would be exempt. The school in question

[*230

appears to be a laudable, private enterprise; and I should regret very much that our decision should discourage such commendable efforts; but the meaning of the act appears *to be plain, and that must control. The case of Chegaray v. Jenkins (1 *Seld.*, 376), was decided entirely upon another ground, and what was there said by one of the judges on the question now before us, was wholly *obiter* and formed no part of the judgment.

Counsel have cited authorities and argued the question of the liability of the defendants if the property of the plaintiff had not been liable to taxation. If the cause had turned upon that point, I should very much doubt the plaintiff's right of recovery. On the trial it was admitted that the warrant to collect the tax had been executed, and the money paid over by the constable " according to law. and not otherwise;" that is, I suppose, that it was collected and paid over in pursuance of the statutes on that subject. (*See Laws of* 1843, *ch.* 230; 1850, *ch.* 121.) Probably a large portion of the money raised by these assessments was applied to the use of the people of the city of New-York. But portions of it were also paid into the treasury of the state before the commencement of this suit. The tax was raised, as it is in every county, through the instrumentality of a board of supervisors. These boards are a part of the internal polity of the state, and it makes no difference that some of the city officers constitute the board of supervisors of the city and county of New-York. But even if an action of trespass or assumpsit will lie against a county for the property taken, or the amount of a tax illegally assessed and collected, a proposition which I do not admit, I do not well see how the corporation of the city of New-York can be held liable in this suit. If an action can be sustained against the corporation for money paid on an illegal assessment for local purposes, and for the particular use of the corporation, it does not follow that the liability of the city also extends to this case. However, it is not necessary to decide this point, as the property in question was not ex-

empt, and the judgment must be reversed and a new trial ordered.

*All the judges, except GARDINER, C. J., who took [*232 no part in the decision, concurred.

Judgment reversed.