### No. 1.

## THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE AMERICAN GEOGRAPHICAL SOCIETY v. THE COMMISSIONERS OF TAXES AND ASSESSMENTS FOR THE CITY AND COUNTY OF NEW YORK.

### No. 2.

## SAME v. SAME.

*"Public library"* — *what exempt from taxation as* — 1 R. S., 388, § 4, *sub.* 5.

The relator, located in the city of New York, was incorporated, among other purposes, for the encouragement and advancement of geographical science, and for "the permanent establishment in the city of New York of an institution in which shall be collected, classified, and arranged geographical and scientific works, voyages and  *  *  *  ; having especial reference to that kind of information which should be collected, preserved, and be, at all times, accessible for public uses in a great maritime and commercial city." A public library has always been, and at the time of this application still was, kept by the relator, free and open to all. *Held,* that the relator was entitled to exemption from taxation as a "public library," by virtue of 1 Revised Statutes, 388, section 4, subdivision 5.

Certiorari to the respondents to review their action in refusing the application of the relator, to have its house and lot No. 11 West Twenty-ninth street, New York, exempted from taxation.

Two writs were issued, one to review the action of the respondents with reference to the assessment for the year 1876, and the other for the year 1877. The property in questson was purchased by the relator in June, 1876.

*Elial F. Hall,* of counsel for the relator.

*I. A. Beall,* of counsel for the respondents.

Bᴀʀʀᴇᴛᴛ, J. :

The Revised Statutes provide that the real and personal property of every public library shall be exempt from taxation. (1 R. S., 388, § 4, sub. 5.) The question is whether the relator is such a public library and entitled to the statutory exemption. The question is not free from doubt. Statutory exemptions are, in general, strictly construed, and there is force in the contention that such exemption should be limited to libraries organized and maintained by the State or its political subdivisions, or to such as are established by private liberality for the free use of the public, "*and such use guaranteed by the charter or deed of foundation.*"

There are, however, some persuasive considerations peculiar to the case at bar. The purposes of the relator are essentially of a public character. It exists neither directly nor indirectly for private, personal, or corporate gain, but for the encouragement and advancement of geographical science, and the collection, diffusion and perpetuation of useful knowledge. Such a public-spirited and beneficial institution is entitled to a broader and more liberal construction of the statute of exemptions, than if it were a mere money-making body. The spirit of the cases favors this conclusion; for, while in *Chegaray* v. *The Mayor* (13 N. Y., 220), it was held that a private boarding-school was not within the statute exempting "every *schoolhouse* and every building erected for the use of a college, incorporated academy, or other *seminary of learning,*" yet in *The Hebrew Free School Association* v. *The Mayor* (4 Hun, 446), a society organized under the laws for the incorporation of benevolent, charitable, scientific, and missionary societies, was treated as a "*religious society*" within an act (Laws of 1852, chap. 282) limiting exemption from taxation to what is "*exclusively*" the property of a "*religious* society."

The object in the one case was private gain, and the construction was strict; in the other gratuitous instruction, and the interpretation was liberal. Assuming, then, that the construction, in the present instance, should not be too narrow, let us look at the relator's charter. It specifies as one, and certainly not the least important, of its objects, "the permanent establishment, in the city of New York, of an institution in which shall be collected, classified and arranged geographical and scientific works, voyages and travels, maps, charts and globes, instruments, documents, manuscripts, prints, engravings, or whatever else may be useful or necessary for supplying full, accurate and reliable information in respect to every part of the globe, or explanatory of its geography, physical and descriptive; and its geological history, giving its climatology, its productions, animal, vegetable and mineral; its exploration, navigation, and commerce; *having especial reference* to that kind of information which should be collected, preserved, and be *at all times accessible for public uses in a great maritime and commercial city.*"

It is true that this latter phrase, grammatically considered, simply characterizes the preceding sentences, but when read in the light of the entire context, and the general objects of the society thus incorporated, it possesses a deeper meaning and must be received as the expression of an independent purpose. Otherwise, the words "which should be at all times accessible for public uses in a great maritime and commercial city," are inapt, in part superfluous and almost bombastic. Certainly, a mere summing up or enumeration of what *a private library should contain*, might have been expressed much more simply and naturally. Such a summing up was evidently not the legislative intention, but rather *an expression of its understanding*, that the library was at all times to be accessible to public uses. It was *with this understanding*, thus expressed, that the charter was sought, *granted and accepted*.

But further, the relator has always acted upon this construction, for we find, as matter of fact, that its library has always been, and still is, free and open to all. So long as the general public continue to have free access to this extensive and valuable library, surely *it is* practically, and to all intents and purposes, a "*public library*." Under such circumstances, to criticise the library as but an incident to the relator's purposes, would seem to be ungracious.

In fact, the collection is one of the relator's greatest achievements, and its "permanent establishment" one of its most conspicuous objects. Clearly it does not detract from its character as a public library, that around it are clustered activities which but tend to increase its volume and widen its usefulness.

The words "public library" are not technical. They have acquired, by judicial decisions, no precise legal meaning. They are words of common use and ought, therefore, as between the public, which is invited to free enjoyment and a disinterested society, such as the relator, to be interpreted as they are commonly understood. Indeed it is conceded that if the free public use had been guaranteed by the express terms of the charter, it would have been a public library within the meaning of the exempting statute. We have seen that such public use *is* guaranteed, if not by express direction, at least by necessary implication. This construction, too, is fully conceded, and indeed taken for granted in the relator's petition, where we find the assertion that "the use of the library by the public *is specially provided for by its charter.*" In view of the result, the relator is bound by this. We are of opinion, therefore, that the house and lot in question should be exempted from taxation, as the real estate of a public library. This applies, however, only to the proceedings to review the action of the commissioners with respect to the year 1877. We agree with the learned corporation counsel that the property was not exempted from taxation for the year 1876, by reason of the relator's purchase in the month of June of that year.

The respondents are entitled to judgment in the first proceeding affirming the assessment and quashing the writ of *certiorari.*

The relator is entitled to judgment on the second writ reversing the proceedings and granting the application for exemption.

Daniels, J., concurred.

Present — Daniels and Barrett, JJ.

Writ quashed in the first proceeding, and assessment affirmed. Proceedings reversed in the second proceeding, and relator's application for exemption granted.