PEOPLE ex rel. SWISS BENEV. SOC. v. COM'RS.    311

First Department, May Term, 1885.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE SWISS BENEVOLENT SOCIETY v. THE COMMISSIONERS OF TAXES AND ASSESSMENTS FOR THE CITY AND COUNTY OF NEW YORK, Respondents.

*Alms-house — what real estate of a benevolent association is exempt from taxation as — 1 R. S., 388, sec. 4, sub. 4.*

The relator was incorporated by chapter 170 of 1851, for the " purpose of affording pecuniary and other relief, to such persons, natives of Switzerland or of Swiss origin, as may be in the United States, and in need of assistance." In 1883 it purchased certain real estate, and has ever since owned, and possessed and used the same exclusively " to give a temporary home, asylum and relief to the sick, necessitous and others who may be proper objects of its bounty in accordance with its charter." It derives no income from the premises and constantly relieves persons who would otherwise be likely to become a charge upon the city and county of New York."

*Held*, that the premises were exempt from taxation as an " alms-house," under subdivision 4 of section 4, 1 Revised Statutes, 388.

Certiorari to review the assessment, for the purposes of taxation, of the relator.

*F. R. Coudert*, for the relator.

*E. Henry Lacombe*, for the respondents.

Davis, P. J.:

The relator was incorporated by chapter 170 of the Laws of 1851. It was empowered to purchase and hold real estate for the objects of its incorporation, which by the act were declared to be solely for the " purpose of affording pecuniary and other relief to such persons, natives of Switzerland, or of Swiss origin, as may be in the United States, and in need of assistance." To accomplish that purpose the relator, in December, 1883, purchased the premises now assessed by the respondents for taxation, and have ever since owned, possessed and used the same exclusively " to give a temporary home, asylum and relief to the sick, necessitous and others who may be proper objects of its bounty in accordance with its charter."

The relator " derives no income from said premises, and constantly relieves persons who would otherwise be likely to become a charge upon the city and county of New York." The relator there-

fore claims that the premises so used are exempt from taxation under the provision of the Revised Statutes (1 R. S., 388, sub. 4, § 4), which is as follows:

"Section 4. The following property shall be exempt from taxation.    *    *    *.

"4. Every poor-house, alms-house, house of industry and ee ry house belonging to a company incorporated for the reformation of offenders, and the real and personal property used for such purposes belonging to or connected with the same."

In its general signification the word "alms-house" undoubtedly includes such an institution or establishment as that owned and maintained by the relator. That word is defined by Webster as "a house appropriated to the poor," and the home of the relator is shown to be exclusively so appropriated; and to such an extent as to relieve the city and county of New York from some part of the charges that would otherwise fall upon it for the support of its poor. But it is claimed that the word alms-house as used in this statute has a technical and restricted signification, and means only such alms-houses as are the property of the public and are used and controlled by public authorities as the receptacles of public paupers, in accordance with the general system of the poor laws of our State. This contention sharply presents the question involved in the case. But the legislature have thought proper to make the exemption of that class of alms-houses the subject of another statute which defines them with unquestionable precision. (1 R. S., 631, § 72.) That statute reads as follows: "Every poor-house, alms-house or other place provided by any city, town or county for the reception and support of the poor, and all real and personal property whatever belonging to or connected with the same, shall be exempt from all assessment and taxation, levied either by the State or by any county, city, town or village."

This statute takes care of all the public alms-houses provided and controlled by the authorities of any city, town or county for the reception and support of the poor, and renders the general statute (sub. 4, § 4, 1 R. S., 388), above quoted, quite superfluous and unnecessary for that end. It may well be therefore, that the legislature, since it must be presumed to do nothing in vain, enacted both these statutes having in contemplation that there might be

other "alms-houses" "not provided by any city, town or county," and yet lawfully and exclusively devoted "to the reception and support of the poor," or, as Webster describes it, "appropriated for the use of the poor," and which ought also to be exempted from taxation for that reason. Such an alms-house, if created or authorized by an act of the legislature, would be a lawful institution empowered to take care of and relieve the poor which came within its jurisdiction as defined by the act creating or authorizing it. No one can doubt the power of the legislature to make provision for any class of the poor that might otherwise need and require the aid or support of a town, county or city, by creating a body corporate with functions and powers, devoted to that end. This has been done in various forms, notably by creating religious corporations by means of which the numerous sects of the country gather in and provide for large classes of the helpless or needy who would otherwise be suffering but unrelieved objects of public charity. The cold and stinted bounty of municipal or State charity is thus supplemented by the generous warmth of a common humanity which is by no means the special attribute of any particular creed. Since it is lawful to do this, no good reason is perceived why, in any given case where the functions of a corporation are rightly exercised by establishing an alms-house for the reception and support of the poor who are the objects of its care specified in its charter, and who might otherwise be charges upon the county, town or city, such alms-house may not be held to be within the meaning of the exemption statute. Such a corporation is not a private one within the sense of a trading, commercial or moneyed one. (It has not the powers essential to them. Its authority is a segment of the general power belonging to the State, and by it distributed to and exercised through its various municipal organizations, to take care of and support its poor). And as it partakes of that power to a limited extent through its charter and has no other, by the expressed or implied limitations of that instrument it is an agency of the State for a purpose public in its nature although its corporators are private persons. Hence the reason of the case is altogether in favor of the exemption because the State by taxing such an alms-house, is taxing so much of its own duty toward the poor who find aid and support therein.

314    PEOPLE ex rel. SWISS BENEV. SOC. *v.* COM'RS.

FIRST DEPARTMENT, MAY TERM, 1885.

This principle seems to have been recognized in *Chegaray* v. *The Mayor* (13 N. Y., 230) (where it was held that the statute exempting every school-house and jail did not include a private school-house), when the court said : " It is evident that it was intended to exempt only property used by the public for the purposes of education, *or which belonged to a corporation created for the advancement of learning, and thereby devoted to educational purposes.*"

The alms-house in question here belongs to a corporation created for the relief of a class of poor and needy persons, and is thereby devoted to that purpose and engaged in taking a portion of a public burthen upon its own shoulders.    The legislature have created the relator for a specific purpose, to wit, to relieve the State from the care of a part of its poor and certainly cannot intend to tax the means by which the relator performs that duty or function.

Our conclusion is that the alms-house of the relator is fairly within the statute of exemption relied on as it is plainly within the letter of its description, and is public and not private in its ends, and is a creation of the legislature devoted and restricted to such purposes, without the right or possibility of private gain to the corporators.

We are well aware of the rule which requires the strict construction of exemption statutes, but that rule is not controlling of this case because the case is altogether outside of the mischiefs intended to be prevented by the rule.

The result is, that the judgment should be awarded to the relator, but it is understood to be stipulated, without costs.

DANIELS, J., concurred.

Judgment awarded in favor of the relator, without costs.