THOMAS McGRATH, Appellant, v. EDWARD M. GROUT, as Comptroller of the City of New York, Respondent.

1. CONSTITUTIONAL LAW — INDEBTEDNESS OF A COUNTY WITHIN CITY. The affixing of salaries to the offices of sheriff, register and county clerk of Kings county in lieu of fees by chapters 704, 705 and 706, Laws of 1901. is not in violation of the provisions of section 10 of article 8 of the Constitution, that whenever any city shall include within its boundaries more than one county, the power of any county wholly included

within such city to become indebted shall cease, since the indebtedness which a county is thereby inhibited from incurring is one which is created for purposes other than for the maintenance of the political organization, and has no reference to the obligation of the county for current expenses of such a nature.

2. SPECIAL CITY LAW — KINGS COUNTY — AFFIXING SALARIES TO COUNTY OFFICES IN LIEU OF FEES. These chapters are not special city laws subject to the requirements of section 2 of article 12 of the Constitution as to enactment, since their titles express no subject connected with the government or affairs of the city of New York, but relate only to the regulation of a county office; the subject-matter of each act relates to the compensation of the offices of a county whose organization as such was expressly excepted and preserved by the Greater New York charter as a political subdivision of the state, so as to be subject to the direction and control of the legislature, and the administration of whose affairs remained a matter of state concern, although it was territorially absorbed in the city of New York, whose departments for certain purposes connected with the carrying on of the county organization, with the payment of expenses incidental thereto and with the collection of necessary moneys by the taxation of property within the county, were made the agents of the state, and whose action in respect thereto is not for the city, and is not connected with and does not affect the corporate city government as such.

*McGrath* v. *Grout,* 69 App. Div. 314, affirmed.

(Argued March 25, 1902; decided April 15, 1902.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered February 26, 1902, which affirmed an order of Special Term denying a motion for an injunction to restrain the defendant Grout, as comptroller of the city of New York, from paying the salaries of Charles Guden, as sheriff; of John K. Neal, as register, and of Charles T. Hartzheim, as clerk of the county of Kings.

The facts, so far as material, are stated in the opinion.

*William J. Carr* and *Luke D. Stapleton* for appellant. Chapters 704, 705 and 706 of the Laws of 1901 are unconstitutional and void, if they be treated as imposing any obligation on the county of Kings. (*Matter of Chapman,* 168 N. Y. 80; *Matter of Greene,* 166 N. Y. 485; *Bush* v. *Board of Supervisors,* 159 N. Y. 212; *People ex rel.* v. *Wemple,* 115 N. Y. 311; *People ex rel.* v. *Taylor,* 17 Misc. Rep. 505;

*People ex rel.* v. *Board of Aldermen*, 89 Hun, 461; *Henderson* v. *Board of Supervisors*, 147 N. Y. 1; *Albrecht* v. *County of Queens*, 84 Hun, 399.) Chapters 704, 705 and 706 of the Laws of 1901 are laws relating to the property, affairs or government of the city of New York, and are absolutely void, as they were not enacted in conformity with section 2 of article XII of the Constitution. (*E. F. Assn.* v. *Trustees, etc.*, 34 App. Div. 138; *Chrystal* v. *Mayor, etc.*, 63 App. Div. 93; *People ex rel.* v. *Murray*, 149 N. Y. 367; *People* v. *Lawrence*, 36 Barb. 177; Cooley's Const. Lim. [6th ed.] 93–98; *People* v. *Mayor, etc.*, 4 N. Y. 423; *McCluskey* v. *Cromwell*, 11 N. Y. 593; *People ex rel.* v. *Wemple*, 115 N. Y. 308.)

*George L. Rives, Corporation Counsel* (*James McKeen* of counsel), for respondent. The bills here attacked are manifestly and obviously bills relating to Kings county as a distinctive territorial subdivision of the state; they are distinctively county bills and not city bills. (*People ex rel.* v. *Murray*, 149 N. Y. 367.) Even assuming that the bills are city bills within the meaning of the Constitution, the provisions of the Constitution have been complied with in their passage. (L. 1895, ch. 9, §§ 1–3.)

Gray, J. This action was brought by a taxpayer of the city of New York to restrain the comptroller of that city from paying the salaries of the defendants, the sheriff, the register and the county clerk of Kings county, upon the ground that certain acts of the legislature, passed in 1901, which affixed salaries to their offices, were unconstitutional. An application by the plaintiff to continue the injunction, which had been temporarily granted upon the commencement of his action, was denied at the Special Term of the Supreme Court, "as a matter of law," and the Appellate Division, in the second department, upon affirming that determination, certified to this court three questions of law: namely, (to include them in one statement), whether chapters 704, 705

and 706 of the Laws of 1901 are "valid and constitutional enactments."

It is argued, in objection to the validity of these acts, that they impose obligations upon the city of New York, or upon the county of Kings, which create new liabilities for the one, or the other, and that, if an indebtedness is imposed upon the county, the acts are void as being in violation of section 10 of article VIII of the Constitution of the state; while, if it is imposed upon the city, they are void as being in violation of section 2 of article 7 of the Constitution.

It is necessary that we should consider the situation under the "Greater New York Charter," as it is affected by these laws. Each of these acts expresses its subject in its title, in the following manner, viz.: "An act to make the office of (clerk of the county of Kings, or sheriff, or register, of the county) a salaried office and regulating the management of said office." They are alike in their general framework and provide, as to each office, so far as it is material, in substance, that the incumbent shall receive a salary in lieu of all fees, commissions, etc.; that the assistants, or subordinates, employed in the office shall receive fixed salaries; that all moneys received by the officer, or by his subordinates, for official services rendered, shall belong to the city of New York and shall be collected, accounted for and paid over, at fixed dates, into the treasury of the city; that after January 1st, 1902, the expenses of conducting the office shall be a charge upon the city and that there shall be a liability for all the moneys received, and not accounted for, by the officer, which shall be enforceable by the city in a civil action.

The county officers, affected by these acts, had previously received their compensation in the fees, which were paid by the public for official services. The city of Brooklyn, with the government of which, in 1895, was consolidated the government of the county of Kings, (Laws of 1895, ch. 954), was, itself, on January 1st, 1898, consolidated with the city of New York, under the provisions of the "Greater New York Charter," passed in May, 1897. This charter has "annexed

to, united and consolidated with" the corporation of the city of New York, "all the municipal and public corporations * * * including cities, villages, towns and school districts, *but not including counties*," within the territory of the counties of Kings, Queens and Richmond, and has devolved upon the new city, thus created, as the successor of all the consolidated corporations, all their rights, powers and lawful obligations, except as specially provided otherwise. (Sec. 1.) While the territory of the counties was taken into the territory of the new city, the county organizations were expressly excepted and they were preserved as political subdivisions of the state. Such of their officers, as held constitutional offices, were, also, excepted and the right to their lawful election recognized. (Sec. 1584.) The powers of administration of county affairs, in the county of Kings, which had been transferred from its former board of supervisors to the board of aldermen of the city of Brooklyn, upon the consolidation of governments, in 1895, have become vested in the board of aldermen of the city of New York. (Sec. 1586.) Territory and local government have been taken from the county of Kings, but it continues to exist as a political organization and its maintenance is expressly provided for. County offices, which were within the legislative power to affect, were abolished and their duties were transferred to corresponding offices under the new city charter. Various provisions of that instrument, as it has been well pointed out in the opinion of the learned judge, at Special Term, show that the state has retained its sovereign right of control over the counties, comprised within the territorial limits of the city of New York, and that their political entity is recognized; the city and its departments being availed of as agencies, designated by the state, in the interests of economy and convenience, for conducting some of their affairs. By section 226, (sub. 8), it is provided that the board of estimate and apportionment shall include in the annual estimates the amounts required "to pay the expenses of conducting the public business of the City of New York * * * and of

the counties of New York, Kings, Queens and Richmond."
By section 1594 the state comptroller is to transmit to the
city comptroller for levy and collection a statement of the
state tax to be paid, and by sections 900 and 902, it is pro-
vided that the comptroller of the city shall submit, annually,
to the board of aldermen, for the purpose of imposing the
annual taxes, a statement of the amount to be raised on
account of the city " and on account of the counties of New
York, Kings, Queens and Richmond," and that he shall
" include and state specifically the sum or sums necessary to
be raised to pay during the current year the salaries of the
county officers and the other county charges and expenses in
the counties of New York, Kings, Queens and Richmond,
respectively, and the Board of Aldermen is hereby author-
ized and directed to levy upon and collect from the taxable
property within each of said counties, respectively, the sum or
sums so necessary to be raised to pay the salaries of county
officers and other county charges and expenses of such
county ; to the end that each of said counties shall ultimately
bear and pay all expenses necessary to be incurred within the
county for county, as distinguished from city, purposes."
Such provisions make it perfectly clear that the county
organization is maintained and provided for, independently
of the city organization.

The first ground of objection taken to these enactments is
that they violated section 10 of article VIII of the Constitu-
tion.    The constitutional provision invoked is that " when-
ever the boundaries of any city are the same as those of a
county, or when any city shall include within its boundaries
more than one county, the power of any county, wholly
included within such city to become indebted shall cease."
It may be doubted whether the effect of these acts is to create
an indebtedness on the part of the county, in any accurate
sense ; but assuming such a construction, the indebtedness,
which a county is inhibited from incurring, in our opinion,
means one which is created for purposes other than for the
maintenance of the political organization.    It has no refer-

ence to the obligations of the county for current expenses of such a nature. The constitutional provision impliedly sanctions this, by expressly excepting from its operation "certificates of indebtedness, or revenue bonds, issued in anticipation of the collection of taxes for amounts contained in the taxes for the year." Indebtedness for the current expenses of the county organization is necessarily incidental and it is made payable from moneys raised annually by taxation upon the taxable property within the county, through the municipal agencies designated by the legislature for the purpose. We do not think that this would be a tenable ground of objection to the validity of the enactments.

The further ground of objection to the validity of these acts is, in substance, that they were "special city laws," which were not enacted in conformity with the provisions of section 2 of article XII of the Constitution of the state. That section provides that "laws relating to the property, affairs or government of cities, and the several departments thereof, are divided into general and special city laws; general city laws are those which relate to all the cities of one or more classes; special city laws are those which relate to a single city, or to less than all the cities of a class. Special city laws shall not be passed except in conformity with the provisions of this section. After any bill for a special city law, relating to a city, has been passed by both branches of the legislature, the house in which it originated shall immediately transmit a certified copy thereof to the mayor of such city, and within fifteen days thereafter the mayor shall return such bill to the house from which it was sent, or if the session of the legislature at which such bill was passed has terminated, to the governor, with the mayor's certificate thereon, stating whether the city has or has not accepted the same." The section further provided that, whenever, during the session, such a bill was returned without the acceptance of the city, or was not returned within the fifteen days, it might be repassed by the legislature and should "then be subject, as are other bills, to the action of the governor." The legislative enactments,

after being transmitted to the mayor, were returned, as not accepted by the city of New York; but the legislature had then adjourned and they were received by the governor and were signed by him. Whether, if they were "special city laws," they were constitutionally passed, under the circumstances, need not be determined; inasmuch as we think they, clearly, were not such. It is to be observed, as a first consideration, that the titles of the acts do not express any subject connected with the government, or affairs, of the city of New York. The sole subject expressed is that of the regulation of a county office. The subject-matter of each act relates to the compensation of a county office, in annexing to it a salary and in requiring the fees for official services to be paid into the treasury of the city of New York. The city is only concerned with receiving the moneys and with the duty of paying the expenses connected with conducting the office. In other words, the legislature has changed the system of compensation from fees, or commissions, to fixed salaries and thus brought the expenses of maintaining the office within the general provisions of the Greater New York charter, which have been adverted to. The act does not affect the city government, its property, or its particular affairs.

The passage of the Greater New York charter was in the direction of securing to the city municipal independence in the control and administration of affairs of purely local concern. The Constitution restricted legislative interference with city affairs by the establishment of safeguards against hasty, or unwise, legislation. No act specially relating to a city could become a valid law, until the detailed requirements of the Constitution were complied with. The provision was solely in the interest of the cities. But Kings county, though territorially absorbed by the city of New York, like other counties, remained subject to the direction and control of the legislature as a political division of the state and the administration of its affairs remained a matter of state concern. In so far as it was necessary for such administration that official, or administrative, acts should be performed, not within the

powers, or duties, of those county officers, who had been continued, the governmental machinery of the city of New York was made applicable. That is to say, for certain purposes connected with the carrying on of the county organization, with the payment of expenses incidental thereto, and with the collection of necessary moneys by the taxation of property within the county, the city departments were made the agents of the state. But what they are required to do is not connected with, and does not affect, the corporate city government as such. Their action is not for the city, nor did it affect city affairs.

It seems to us very clear that the legislative enactments, which are now complained of, related distinctly, and only, to county affairs and cannot be regarded as "special city laws," which came within the purview of the constitutional provision in question.

In connection with the very able opinions which were delivered in the courts below, enough has been said to justify the conclusion that the objections to the validity of these acts are unsound and, therefore, the questions, which have been certified to us, as to whether they are valid and constitutional, should be answered in the affirmative.

The order appealed from should be affirmed, with costs.

PARKER, Ch. J., O'BRIEN, BARTLETT, HAIGHT, CULLEN and WERNER, JJ., concur.

Order affirmed.