THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE CITY OF NEW YORK, Appellant, Respondent, *v.* ROBERT H. NEVILLE and Others, as Assessors of the City of Yonkers, etc., Respondents, Appellants.

Second Department, May 17, 1918.

**Municipal corporations — constitutional law — section 480 of Greater New York charter constitutional although not submitted to mayor of Yonkers for acceptance — assessment and taxation of lands taken for New York water supply — Hill View reservoir is adjunct of aqueduct and not subject to taxation.**

As section 480 of the Greater New York charter relating to the assessment and taxation of lands taken in connection with the water supply of said city contains no provisions which in terms relate to the city of

Yonkers or to its property, affairs or government, it is not unconstitutional as violating section 2 of article 12 of the State Constitution because it was not transmitted for acceptance to the mayor of the city of Yonkers.

In the phrase " relates to more than one city " as used in section 2 of article 12 of the State Constitution, the word " relates " signifies that the object is directly, not incidentally or remotely, involved.

Section 480 of the Greater New York charter excludes aqueducts from assessment and taxation in the counties in which they are located, and the " Hill View reservoir," which is constructed for the purpose of regulating the volume of water delivered to the city according to the demands of the different periods of the day, is a portion of an aqueduct, although called a reservoir, and hence is not subject to assessment and taxation.

APPEAL by the relator, The City of New York, from part of an order of the Supreme Court, made at the Westchester Special Term and entered in the office of the clerk of the county of the Westchester on the 10th day of July, 1916, as amended by an order entered in said clerk's office on the 18th day of May, 1917.

Appeal by the defendants, Robert H. Neville and others, as assessors, from the whole of said order.

*I. J. Beaudrias* [*Lamar Hardy, Corporation Counsel,* with him on the brief], for the City of New York.

*William A. Walsh, Corporation Counsel,* for the City of Yonkers.

JENKS, P. J.:

The respondents to the writ of certiorari admit the application of section 480 of the Greater New York charter (Laws of 1901, chap. 466) in view of *Matter of City of New York* v. *Deyo* (158 App. Div. 319; affd., on opinion below, 213 N. Y. 706), but contend that this statute was enacted in violation of section 2 of article 12 of the Constitution, because the bill for enactment was not submitted to the mayor and the legislative body of the city of Yonkers.

The statute provides:

" § 480. The lands heretofore taken or to be taken for storage, reservoirs, or for other constructions necessary for the introduction and maintenance of a sufficient supply of water in the city, or for the purpose of preventing contamination or pollution, shall be assessed and taxed in the counties in which they are or may be located, in the manner prescribed by

law, exclusive of the aqueducts. But nothing in this section contained shall prevent the assessors in the county of Nassau from assessing the pumping stations and buildings located in such county."

The statute is a section of the Greater New York charter. It contains no provision that relates in terms to the city of Yonkers or to its property, affairs or government. It provides for the assessment and taxation of lands of the city of New York in the respective counties of their location. The statute is an exercise of the sovereign power of taxation, both in its terms of subjection and of exemption. (Cooley Taxation [2d ed.], 200.)

The Legislature has in effect delegated to certain officers of a city situate in one of such counties the power to levy taxes for local purposes (Cooley, *supra*, 63), and has thereby selected such officers as agents of the State. This is a matter of governmental convenience. The statute in furtherance of such policy " is not connected with, and does not affect, the corporate city government as such. Their action is not for the city, nor did it affect city affairs." (*McGrath* v. *Grout*, 171 N. Y. 7, 15.) The statute provides that part of the lands shall be subject to taxation and part of them exempt therefrom. It is true that if all the lands were taxable there would be more property subject to taxation, but that circumstance does not relate to the property, affairs or government of the city of Yonkers. I think that the word " relating," as used in the Constitution in this instance, signifies that the object is directly, not incidentally or remotely, involved. (*Wilson* v. *County of Marion*, 205 Ill. 580.) In this sense the statute *relates* to the property of the city of New York. I think that the argument of unconstitutionality is not sound. It seems anomalous that a bill for a statute in exercise of the sovereign power of taxation must be submitted to the mayor and the local authorities of any city whenever and because the Legislature as a matter of governmental convenience selects as agents of the State, in the matter of taxation, any officers of that city, and I think the Constitution does not prescribe such procedure.

I am of opinion that the land occupied by the fabric termed

802    People- ex rel. City of New York v. Neville.

Second Department, May, 1918.    [Vol. 183.

the " Hill View reservoir " is within the purview of the word
" aqueducts " as used in the said statute, section 480.

We err if we read this statute as if the assessment and
taxation authorized was in furtherance of the general principle
and the exemption of aqueducts was in exception to that
principle.   " General tax acts of a State are never, without
the clearest words, held to include its own property, or that
of its municipal corporations, although not in terms exempted
from taxation."   (*Van Brocklin* v. *State of Tennessee*, 117
U. S. 173.)   This principle applies to municipal water works.
(*City of Rochester* v. *Town of Rush*, 80 N. Y. 302.)

It is not necessary to decide whether the word " assessed "
in the phrase of the statute, " assessed and taxed," is
inclusive of that kind of taxation termed assessment for
special benefits, inasmuch as this record does not present
the question.   I may comment that " The accurate meaning
of the word ' assessment ' doubtless is the determination of
the liability of the property to taxation and its valuation
for that purpose.   But the term ' assess ' is also used as
meaning to impose a tax " (Cullen, J., for the court in
*People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Priest*, 169 N. Y.
435), and there is an interesting discussion of the purport
of " assessment " when united with the word " taxation "
in *Weeks* v. *City of Milwaukee* (10 Wis. 242 *et seq.*).   (But
see also *First Division St. Paul & P. R. R. Co.* v. *City of
St. Paul*, 21 Minn. 526, 528.)

The statute shows discrimination between the lands taken
for the collection, storage and purification of the water,
and the lands taken for the machinery of the direct supply
of water after the water has been collected into volume for
delivery.   Thus the lands to be assessed and taxed are specified
as those taken for " storage, reservoirs, or for other con-
structions necessary for the introduction and maintenance
of a sufficient supply of water in the city, or for the purpose
of preventing contamination or pollution."   " Storage " is
self-definitive.   A " reservoir " is " A place where water
collects naturally or is stored for use when wanted, as to
supply a  *  *  *  city." (Century Dict.; 4 Words & Phrases
[2d. Series], 335.)   " Reservoir " is from the French —
" réservoir," a storehouse.   (Century Dict.)   The general

expression " or for other constructions necessary for the introduction and maintenance of a sufficient supply," etc., is referred to the antecedent specific words, upon the principle of *ejusdem generis* (*Chegaray* v. *Mayor, etc.*, 13 N. Y. 229; *People ex rel. Davidson* v. *Gilon*, 126 id. 156), and certainly should not be considered to include " aqueducts " expressly mentioned in exclusion in the self-same sentence.

When regarded for taxation or assessment, there is a distinction between lands taken for the way of the artificial river that flows daily to the city of New York and the other lands described in the statute. At most, the lands required for the waterway must have relative definite limits, but there is no relative definite limit to " lands heretofore taken or to be taken for storage, reservoirs, or for other constructions necessary for the introduction and maintenance of a sufficient supply of water in the city, or for the purpose of preventing contamination or pollution." The words " sufficient supply of water in the city," in themselves, applied to a city like New York, are sufficient indication of relative indefinity. For these reasons the Legislature might well exclude lands devoted to the aqueduct, and subject the other lands, in view of a fair adjustment of the burdens of taxation.

LYON, J., writing for the court in *Deyo's Case* (*supra*, p. 322), says: " As to the discharge pipe, termed the blow off, the record is devoid of evidence as to its nature, but if the same constitutes an essential part of the aqueduct and was necessary to its operation, it would seem to be a part of the aqueduct and exempt from taxation and assessment." I think that this is an accurate statement of the test whether this so-called " Hill View reservoir " is within the term " aqueducts." The mere fact that this fabric is called a " reservoir " does not determine its character; but rather its purpose and use do so. " *Qui hæret in litera hæret in cortice.*" DOE, C. J., in *Sargent* v. *District* (63 N. H. 528, 530) says: " It is the duty of the court to ascertain, from legal proof, the intention of the Legislature, whose purpose, plainly manifested by the entire act, cannot be thwarted by a literal construction of particular passages." The reservoirs subject to taxation are those used distinctively for storage. But this Hill View reservoir is described by both of the eminent experts, one

804    People ex rel. City of New York v. Neville.

Second Department, May, 1918.    [Vol. 183.

called by each party, as an " equalizing reservoir." Thus Mr. Vermeule, called on behalf of the respondents in this proceeding, testifies on cross-examination: " Q. You distinguish between this reservoir and other reservoirs belonging to the City of New York? A. Yes, sir, decidedly, this is an equalizing reservoir and those are storage reservoirs." The purpose, use and necessity of this fabric is plain and without dispute. The demand for water in the city of New York fluctuates periodically in each day. The demand is greatest during the forenoon and until the day is well gone in that period. The demand is least between midnight and daylight. The fluctuations are so relatively large that if there were no check upon the flow the water in some periods would be in excess of the demand, and in other periods the pressure would be insufficient. The office of the Hill View reservoir is to regulate each daily supply relative to the demands of the different periods of each day. It is located " practically " at the entrance of the distribution system. It has a north gatehouse for the intake and a south gatehouse for the outlet. The aqueduct construction is continued from gate to gate of this reservoir by a by-pass. This " reservoir " does not *store* any of the waters that are brought to it. Such waters are carried to it by the conduit for the supply of each day. Normally, the reservoir but acquires the supply of the day according to the periods of it, and some of those periods require all of the waters brought to the reservoir. In effect, here is a governor of the current of the day on its way to the city of New York. Professor Burr, the expert called by the city of New York, testifies: " In other words it is a controlling or regulating reservoir, so that a practical uniform flow through the entire aqueduct system is rendered possible, and the demands throughout the city are met so as to preserve practically as nearly a uniform pressure throughout the pipes of the distributing system as possible." The same witness testifies: " Without such necessary connected or collateral constructions no water could be introduced into the aqueduct nor could the desired flow be maintained, consequently the aqueduct would be incomplete and ineffective for its intended purpose. * * * Q. If as a matter of fact the Hill View reservoir, so called, was not

where it is, in the time of minimum demand, would the excess of water have to be wasted? A. It would not be wasted, but there would be produced a very undesirable increase of pressure. Q. And it might do damage? A. It might do damage at some points." Mr. Vermeule, the expert called by the respondents in this proceeding, does not differ from Professor Burr as to the purpose and necessity of this reservoir. His point of difference is that he does not consider that there is *any aqueduct* lying *within this reservoir*, but that the by-pass is part of the *reservoir*. In other words, he excludes this part of the system from the aqueduct, in that there is no isolated conduit continued through it. There is, perhaps, an indication of the purview of the word " aqueducts " in the final clause of this section 480, in that in the *county of Nassau* it is permitted to assess the pumping stations and buildings located in that county.

Professor Burr also testified that the term " aqueducts " as employed in the statute, in relation to the context is comprehensive to include not only the conduit, strictly speaking, through which the water in motion actually flows, but also all necessary collateral constructions or works necessary to the entrance into or discharge of the conduit proper, or for the holding of such volume of water at any point or points as may be necessary for the maintenance of a proper flow through the conduit. And he also testifies that a reservoir in the general line of an aqueduct is simply an enlarged part of the aqueduct proper, made so by various purposes and without which the aqueduct could not be operated satisfactorily. There is a principle that " where technical words are used in reference to a technical subject, they are primarily interpreted in the sense in which they are understood in the science, art, or business in which they have acquired it." (Endlich Stat. § 74.)

As the collected water on its direct way to the city for distribution flows through its conduit to this reservoir, through the reservoir and out of it, and the use of this reservoir is but to regulate the volume according to the demands of the different periods of each day, in the words of LYON, J. (*supra*), it " constitutes an essential part of the aqueduct and was necessary to its operation," and his conclusion, " it would

seem to be a part of the aqueduct and exempt from taxation and assessment," is applicable.

The order must be modified in accord with this opinion, and as so modified it is affirmed, without costs of this appeal to either party.

THOMAS, RICH, PUTNAM and BLACKMAR, JJ., concurred.

Final order modified in accord with opinion and as so modified affirmed, without costs of this appeal to either party. Order to be settled before the presiding justice.