PEOPLE ex rel. UNGER v. KENNEDY, Warden of Sing Sing Prison.

(Supreme Court, Appellate Division, First Department. January 17, 1913.)

1. CONSTITUTIONAL LAW (§ 65*)—STATUTES (§ 35½*)—LEGISLATIVE POWERS—DELEGATION—REFERENDUM PROVISION.

The referendum provision of Bronx County Act (Laws 1912, c. 548) § 16, to the effect that the act should be inoperative and void unless at the general election in November, 1912, a majority of the votes cast by the electors in the county of Bronx as designated should be in its favor, is unconstitutional as a delegation of the legislative power of the state,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

which, by Const. art. 3, § 1, is expressly vested in the Senate and the Assembly.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 116; Dec. Dig. § 65;* Statutes, Dec. Dig. § 35½.*].

2. STATUTES (§ 64*)—PARTIAL INVALIDITY—COUNTIES.

The invalidity of section 16 of the Bronx County Act (Laws 1912, c. 548), providing that the act should be inoperative unless at the general election in November, 1912, a majority of the votes cast in the county, as designated, should be in its favor, which provision was added by the Legislature, and without which it would not have been enacted, affects a substantial part of the statute, and renders the whole act unconstitutional.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 58–66, 195; Dec. Dig. § 64.*]

Scott and Dowling, JJ., dissenting.

Appeal from Special Term, New York County.

Habeas corpus by the People of the State of New York, on the relation of Joseph J. Unger (alias McKenna), against John S. Kennedy, as Warden of Sing Sing Prison. From an order (138 N. Y. Supp. 581) dismissing the writ and remanding the relator to custody, he appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Emanuel Klein, of New York City, for appellant.

Louis O. Van Doren, of New York City, for Association of the Bar, Borough of the Bronx.

Robert C. Taylor, Asst. Dist. Atty., of New York City, for respondent.

INGRAHAM, P. J. The facts upon which it is claimed in this proceeding that one Joseph J. McKenna is improperly restrained in a state prison are that said McKenna was charged with the commission of a crime in the territory of the borough of the Bronx on June 6, 1912; that he was subsequently indicted by a grand jury of the county of New York, tried in the Court of General Sessions of the Peace, and by a judgment of the said court was convicted of the crime for which he was indicted. The relator claims that the Court of General Sessions had no jurisdiction to indict or try the said McKenna by reason of the fact that the Legislature by chapter 548 of the Laws of 1912 created the said territory of the borough of the Bronx into a separate county of the state, which act became a law on April 19, 1912. The crime for which the said McKenna was indicted and convicted was murder in the first degree, and he is held by the warden of the state prison at Ossining under a warrant reciting the conviction. If this statute, chapter 548 of the Laws of 1912, is void as in violation of the Constitution, it is conceded that the Court of General Sessions had jurisdiction to try the relator, and the writ must be dismissed.

The question of the constitutionality of that act having been fully argued before us, it is important that there should be an early determination of that question. The prisoner was indicted by a grand

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

jury in the county of New York. Section 6 of article 1 of the Constitution provides that no person shall be held to answer for a capital or otherwise infamous crime, except in cases of impeachment, and in cases of militia when in actual service, unless on presentment or indictment of a grand jury. Section 252 of the Code of Criminal Procedure provides that the grand jury has power, and it is their duty, to inquire into all crimes committed or triable in the county, and to present them to the court. There is no provision of law, with which I am acquainted, which authorizes the grand jury to inquire into or present an indictment against a prisoner who has committed a crime in another county than that in which the grand jury is impaneled. In Mack v. People, etc., 82 N. Y. 235, it was held that though at common law a grand jury could not regularly inquire of a fact done out of that county for which they were sworn, and that as a rule an indictment could be preferred and tried only in the county where the offense was committed, there were exceptions to that rule of instances in which the Legislature had directed otherwise. The section of the Constitution to which attention has been called must be held to have recognized that legislative power, and that it must be taken to have meant the action of a grand jury taken as authorized by law. It was also held that the offense was against the peace of the people of the state of New York, and the people, by a law passed before the commission of the offense, may lawfully direct that the offender be tried in another county than that in which the offense occurred.

There is no provision, however, in this law now under consideration, which authorizes the grand jury of the county of New York to inquire into a crime committed in what was to be by the act the county of the Bronx. Section 8 of the act provides that:

"There shall be a commissioner of jurors for the county of the Bronx who shall be appointed as provided by chapter four hundred and forty-one of the Laws of eighteen hundred and ninety-nine, except that within thirty days after the time of taking effect of this act, the Governor shall appoint a commissioner of jurors for the county of Bronx, who shall hold such office until the first day of January, nineteen hundred and fourteen, and until the appointment of his successor, and such commissioner of jurors within said county of Bronx shall exercise all the powers and possess all the authority as to the returning and summoning of grand and trial jurors for the said county of Bronx as now provided by said chapter four hundred and forty-one of the Laws of eighteen hundred and ninety-nine, and all acts amendatory thereof and supplemental thereto."

Provision is therefore made for a commissioner of jurors for the county of Bronx before January 1; 1914, and he is authorized to return and summon a grand jury for that county. The act, therefore, contemplates the returning and summoning of both grand and trial jurors in the county of Bronx before January 1, 1914. Certainly, if such a grand jury had been constituted as the act contemplates, that grand jury would have had the sole authority to inquire into and present indictments for crimes committed in the county of Bronx. There is nothing in the law to justify the conclusion that it was intended to confer on a grand jury of the county of New York power to inquire into and present indictments for crimes committed in the county of Bronx.

Section 9 of the act provides that:

"The several courts within the county of New York and within the First judicial district of the Supreme Court of the state of New York shall have and retain jurisdiction of all actions, proceedings and matters that shall have been *rightfully* commenced in said courts prior to the said first day of January, nineteen hundred and fourteen, and the several courts of the county of Bronx having criminal jurisdiction on and after the first day of January, nineteen hundred and fourteen, shall have the same jurisdiction of crimes, offenses and misdemeanors that shall have been committed in the said territory that the courts of the county of New York having criminal jurisdiction now have in the county of New York, provided proceedings shall not have been already rightfully commenced in any of the courts of the county of New York for the prosecution of said crimes, offenses and misdemeanors, in which case, the said courts within the county of New York shall have and retain jurisdiction of the same for the full, complete and final disposition thereof, and until the said first day of January, nineteen hundred and fourteen, the said courts of the county of New York, and in the said First judicial district, shall retain and exercise in all civil and criminal proceedings the same jurisdiction they now have."

The jurisdiction of a court of criminal jurisdiction to try a prisoner for a felony must depend upon an indictment being presented by a grand jury authorized to inquire into and present an indictment for the crime charged, and undoubtedly under this statute as it stands, if valid, a crime having been committed in the Bronx before the county of Bronx was created, and a grand jury of New York county having indicted the person guilty of the crime, the courts of New York county could try the accused and render judgment against him. But in none of the provisions of the statute is the grand jury of the county of New York authorized to present an indictment against a person accused of committing a crime within the borough of the Bronx after that county is duly created.

If the commissioner of jurors had been appointed, as was contemplated by the act, within 30 days after its passage, and had returned and summoned a grand jury for the county of Bronx, I do not think the grand jury of the county of New York would have had jurisdiction to inquire into and present an indictment for a crime committed in the borough of the Bronx after the act took effect. As a fact the Governor had not appointed a commissioner of jurors within 30 days after the passage of the act, but no action or nonaction of the Governor or of a commissioner of jurors appointed by him could confer jurisdiction on a grand jury of New York county to indict a person for a crime committed in the borough of the Bronx after that county was duly created and existing as a separate and independent county of the state. As I view it, therefore, the question directly presented on this application involves a determination of the question as to whether this act, creating a county of Bronx, violates any provision of the Constitution.

The division of this state into counties has existed since the state was organized, and is recognized by several provisions of the Constitution. Thus, section 10 of article 8 recognizes a county as one of the political subdivisions of the state, and provides for the amount of indebtedness which a county is authorized to incur. Section 1 of article 10 provides for the election of sheriffs, clerks of counties, district

attorneys, and registers, and provides that these officers shall be chosen by the electors of the respective counties. Section 2 of the article provides that all county officers whose election or appointment is not provided for by the Constitution shall be elected by the electors of the respective counties, or appointed by the board of supervisors, or other county officers, as the Legislature shall direct. Section 18 of article 3 provides that the Legislature shall not pass a private or local bill locating or changing county seats, and provides for the election of members of boards of supervisors. Section 27 of the article provides that:

"The Legislature shall, by general laws, confer upon the boards of supervisors of the several counties of the state such further powers of local legislation and administration as the Legislature may, from time to time, deem expedient."

The Constitution, therefore, recognizes a county as a political subdivision of the state, organized for the purpose of local self-government. The local legislative body, with the other county officers whose election or appointment are provided for by the Constitution, constitutes the officials by whom the offices of the county are to be conducted. There can be no doubt of the power of the Legislature to change county lines and create new counties; but, when a county once becomes established by law, these various provisions of the Constitution become applicable, and the county officers could be elected or appointed only as provided for by the Constitution. Now, the act of the Legislature under consideration was passed to create a new county, which, when created, should become one of the counties of the state; and to it applied the various provisions of the Constitution which regulated the election or appointment of county officers, and it would seem to be clear that the Legislature could not, by creating a new county, provide that any officers should perform the duties of the various county officers, unless they were elected as provided for by the Constitution.

Bearing in mind these several provisions of the Constitution, the question as to the time when the new county existed becomes material. Section 1 of the act provides that:

"All that territory now comprised within the borough of Bronx in the city of New York * * * is hereby set off from the county of New York and is erected into the county of Bronx as a separate and distinct county of the state of New York from and after the date of taking effect of this act, except, however, that until constitutional and legal change, the said territory hereby erected as the county of Bronx shall continue to be, for the purpose of electing members of assembly, a part of the thirtieth and all of the thirty-second, thirty-third, thirty-fourth and thirty-fifth Assembly districts of the county of New York, as now constituted by law, and shall continue to be, for the purpose of electing senators, a part of the twenty-first and all of the twenty-second Senate district in the county of New York as now constituted by law."

And section 17 provides:

"This act shall take effect immediately."

Thus the act took effect at the date of its passage, and all the other provisions of the act show, I think, that such was the intention of the

Legislature.  Thus, in section 1, provision is then made for the election of justices of the Supreme Court and a representative to Congress, and then it is provided that:

"Freeholders, citizens and inhabitants of said county of Bronx for all purposes except as aforesaid shall have and enjoy all and every the rights, powers and privileges as freeholders, citizens and inhabitants of any of the counties of this state are by law entitled to have and enjoy, but they shall be subject to be assessed and taxed for city, county and state purposes in the manner provided by the laws of the state of New York, and by the provisions of chapter three hundred and seventy-eight of the Laws of eighteen hundred and ninety-seven and of all acts amendatory thereof and supplemental thereto."

Section 2 of the act provides that the canvass of votes for officers to be elected—

"shall be made by the board of county canvassers of the county of Bronx in the same manner and with like effect as statements of election are made by boards of county canvassers of other counties in the city of New York."

Section 3 provides for a County Court and Surrogate's Court in the county of Bronx, for the election at the general election in 1913 of a county judge, a surrogate, a district attorney, a sheriff, a county clerk, and a register of deeds, who are to perform all the duties as required by the Constitution and laws of this state.  Provision is then made for deputies and assistants to those officers.  Section 4 provides for the salary of the county judge, surrogate, and district attorney, and that such salaries or other compensation and all other county charges and expenses of the county of Bronx shall be audited and paid by the department of finance in the manner provided for the audit and payment of the salaries of all county officers and the charges and expenses of the counties now included within the city of New York.  Section 5 provides that:

"All the county officers for the county of Bronx hereby erected and which are authorized by this act shall be elected at the general election of this state in the year nineteen hundred and thirteen."

And it is then provided:

"In the meantime, in order that no existing rights may be prejudiced, and to prevent an interregnum, the county officers of New York county shall continue to have their present jurisdiction, powers and duties in the territory within the county of Bronx until the first day of January, nineteen hundred and fourteen, except as herein otherwise provided."

Section 6 of the act provides for the holding of the County Court, the Surrogate's Court, and the sittings and terms of the Supreme Court held in and for the county of Bronx.  Provision is made for a courthouse to be erected in said county, and until then the said courts shall be held at such place and places in said county as should be designated and fixed by the commissioners of the sinking fund of the city of New York, and it is further provided that:

"Within thirty days after the time of taking effect of this act, the justices of the Appellate Division in the First Department shall fix the times and places for holding Special and Trial Terms of the Supreme Court in the county of Bronx, as provided by the Judiciary Law."

Section 8 provides that:

"There shall be a commissioner of jurors for the county of Bronx who shall be appointed as provided by chapter four hundred and forty-one of the Laws of eighteen hundred and ninety-nine, except that within thirty days after the time of taking effect of this act the Governor shall appoint a commissioner of jurors for the county of Bronx, who shall hold such office until the first day of January, nineteen hundred and fourteen, and until the appointment of his successor."

Section 9 provides that:

"From and after the time of the taking effect of this act, the Supreme Court, and on and after the first day of January, nineteen hundred and fourteen, the County Courts shall have jurisdiction over all crimes and misdemeanors committed within the territory of the county of Bronx, except as herein otherwise provided."

The section then provides for Courts of Special Sessions and Magistrates' Courts; that the several courts within the county of New York and within the First judicial district of the Supreme Court of the state of New York shall have and retain jurisdiction of all actions, proceedings, and matters that shall have been rightfully commenced in said courts prior to the 1st day of January, 1914, and the several courts of the county of Bronx having criminal jurisdiction on and after the 1st day of January, 1914, shall have the same jurisdiction of crimes, offenses, and misdemeanors that shall have been committed in the said territory that the courts of the county of New York having criminal jurisdiction now have in the county of New York. Section 10 of the act provides that:

"The prisoners of the said county of the Bronx and persons lawfully detained on any process therein shall be confined in the jail or prison or other place of detention of the county of New York, in which such prisoners and persons of the county of New York arrested, held or detained are now confined or detained as provided by law, until the jail or other place of detention to be hereafter erected by the county of Bronx shall be furnished in such manner as in the opinion of the sheriff of the said county of Bronx will confine the prisoners or other persons lawfully detained in the same, when it shall be lawful for the said sheriff to remove and commit them to the jail or other place of detention of the said county of Bronx."

Also that:

"The reasonable charges and expenses of the county of New York for the custody, maintenance and detention of all said prisoners or other persons detained as aforesaid as may be thus committed to the keeper of said jail or other place of detention of the said county of New York, shall be ascertained and audited by the comptroller of the city of New York and the same shall be levied and collected against the county of Bronx in the same manner that other county charges are levied and collected against said county, and the amount thereof shall be paid into the treasury of the city of New York and credited by the comptroller to the county of Bronx."

Section 12 of the act provides that:

"The county of Bronx erected by this act shall possess all the rights and be subject to all the obligations of the counties now included within the city of New York, except as in this act specifically provided."

Section 13 provides for the raising by taxation of the amount required for the salary of county officers, and all other county expenses

and charges of the county of Bronx, and that the same shall be levied and collected upon the taxable property within said county in the manner provided for by the city of New York; and section 15 provides that the county judge of the county of Bronx shall forthwith adopt and procure a seal for the said county of Bronx. Section 16 provides for the submission of the question as to whether the territory within the borough of the Bronx shall be erected into the county of Bronx at the general election in 1912, which will be referred to hereafter.

This analysis of the statute seems to me to conclusively establish that by it the county of the Bronx was created as of the date of the passage of the act, April 19, 1912. The first section of the act declares that all the territory now comprised within the borough of the Bronx—

"is hereby set off from the county of New York and is erected into the county of Bronx as a separate and distinct county of the state of New York from and after the date of taking effect of this act."

No language could be clearer or more emphatic. To construe this provision as postponing the creation of the county until a future time would, it seems to me, be a direct violation of its express language. All the subsequent provisions of the act contemplate the existence of a new county from the date of the passage of the act, and provide for what the Legislature understood would otherwise be called an "interregnum," viz., the period between the time of the coming into existence of the county and the time when the proper county officers should be elected. If the county was not created until the 1st day of January, 1914, when the county officers would be ready to assume their duties, the provisions to which attention has been called would have been unnecessary; for, until that time, the territory included within the boundaries of the new county would have remained a part of the county of New York. What was intended to be accomplished by the act was to create a county, and then provide that the duties which by law were devolved upon the county officers should, until the county officers were elected, be performed by the officers of an adjoining county, viz., the county of New York.

The operative part of the act was to take effect immediately, viz., April 19, 1912. On that day the act became a law of the state of New York, and, as I view it, it became operative in all its parts. The act commanded that certain acts should be performed in the future, and fixed the time within which those acts should be performed, in some instances by the designation of terms of the Supreme Court by the justices of the Appellate Division in this Department, and by the appointment by the Governor of a commissioner of jurors of the county after the taking effect of the act. It was contemplated, it seems to me, that these duties should be performed within 30 days from April 19, 1912. The time for the performance of these acts required to be done, viz., the election of county officers, was fixed to occur after the general election to be held in 1913. The mandatory provisions of the whole act, includ-

ing the direction as to the performance of these duties before indicated, came into force when the act took effect. There is not one word, that I can see, in this statute, from beginning to end, that postpones the time when the act itself should become a law after the date of its passage, and therefore the act itself became a law on that date, and all of its provisions then came into full force and effect.

If that be true, no provision being made for the election of county officers until the general election of 1913 and their installation in office on the 1st day of January, 1914, a county was created without officials to perform the county functions until January 1, 1914. It seems to me quite clear that after that time there could be no tax levied upon the property located in the county of Bronx to pay the county officials of the county of New York; the county of Bronx being no longer a part of the county of New York. The machinery for the government of counties, so far as the territory within the new county was concerned, was changed, so that the officials of the county of New York would no longer have jurisdiction to perform their duties within the county of Bronx, except so far as they were authorized to perform such duties by the provisions of the statute; but the Constitution expressly provides, in the section to which attention has been called, that these county officers—those officers who have jurisdiction to perform the governmental parts of the counties—should be elected by the election of the counties, and it seems to me that any attempt of the Legislature to provide that the duties of the county officers should be performed by officers other than those elected or appointed as provided for by the Constitution was void. The act, as I read it, attempted to create a new county on April 19, 1912. The act provides that the—

"freeholders, citizens and inhabitants of said county of Bronx for all purposes evcept as aforesaid shall have and enjoy all and every the rights, powers and privileges as freeholders, citizens and inhabitants of any of the counties of this state."

They were to be assessed for city, county, and state purposes. They certainly could not be taxed for county purposes of counties other than the county of Bronx, and that county was created and those rights confirmed from and after the date of the taking effect of the act, and this act took effect on its passage. I cannot escape the conclusion that the creation of such a county, with the power to authorize the performance of duties of the county by other persons than those elected by the electors of the county, was a violation of the provisions of the Constitution which renders the whole act inoperative and void.

[1] We now come to the effect of section 16 of the act. That section provides that:

"At the general election in November, nineteen hundred and twelve, there shall be submitted to the voters of the borough of the Bronx the question: 'Shall the territory within the borough of the Bronx be erected into the county of Bronx?' If it shall appear that a majority of the votes cast on said question at said general election were against the erection of said county of Bronx, then this act shall be inoperative and void."

By this section the Legislature has for the first time in the history of this state, and, so far as I know, in any state, submitted a question to the people of a portion of the state, whether or not an act duly passed and which has become a law should become "inoperative and void," or, in other words, whether such act should or should not be repealed, was to be determined, not by the Legislature, but by the people of a limited territory specified. The question that was to be submitted was not whether an act which was to be in force over all the state should or should not apply to a particular locality, or whether the provisions of the law which, although in form general, should be the law in a certain political subdivision of the state where the electors determined that it should not there be in force; but here these electors of the borough of the Bronx, a borough of the city of New York and a part of the county of New York, were asked to vote upon a question as to whether that borough should be constituted a county, and, if they voted in the negative, then the statute which had become a law on April 19, 1912, was to become inoperative and void.

The question is: Was this within the power of the Legislature? As I think, I have shown the act went into effect on April 19, 1912, and it then became a law of the state, unless it violated some provision of the Constitution. Its object was to create a new county of the state, and that object was accomplished by the passage of the act. The passage of the act was a distinct exercise by the Legislature of the power vested by the Constitution in the Senate and Assembly of the state of New York, and yet by virtue of this provision the electors of the borough of the Bronx were authorized by a vote cast at the following general election to repeal that act. There is nothing that postponed the taking effect of the act until after this vote of the people. Certainly some parts of the act were effective, because the act of taking a vote on the question was of itself the exercise of an act of the Legislature. There was no question submitted to the existing county of New York as to whether this act should be effective, or applied to the borough of the Bronx; but the bald power was given to the electors of the borough of the Bronx to repeal an act duly enacted by the Legislature, and this certainly seems to me to have been as much an act of the Legislature as was the original enactment of the act by the Legislature with the approval of the Governor.

Now, the Constitution (section 1, art. 3) in the broadest terms vests the legislative power of the state in the Senate and Assembly. The people, by adopting this Constitution, renounced for themselves the exercise of legislative power and vested it in their representatives. When the state of New York became a free and independent state, the legislative, as well as the executive and judicial, powers were assumed by and were vested in the people. To insure a proper exercise of the powers appertaining to these divisions of government, the people themselves have vested the legislative power in the Legislature, the executive power in the Governor, and the judicial power in the courts, as by themselves established. That the whole people of the state could

assume this power may be unquestioned; but, having conferred that power upon their representatives in the Legislature, it seems to me clear that the Legislature has no right to vest this power in a small body of voters, any more that it would in individuals or corporations. If the Legislature has the power to determine whether or not a valid law shall thereafter become "inoperative and void" by a vote of the borough of the Bronx, I see no reason why it could not make the whole provision dependent upon the vote of any other city or town in the state, or of the directors of a corporation or voluntary association. If the power exists, the method of its exercise is in the discretion of the Legislature.

Section 16 of article 3 of the Constitution provides that no bill shall be passed or become a law, except by the assent of a majority of the members of each branch of the Legislature; and section 9 of article 4 provides that before a bill which has passed the Legislature shall become a law it must be presented to the Governor for his approval, but, if he refuses to approve it, it shall become a law notwithstanding the objection of the Governor by a vote of two-thirds of the members elected to each of the branches of the Legislature. The question of the power of the Legislature to refer to the electors the question as to whether a bill passed by the Legislature should or should not be a law was first raised in this state in the case of Barto v. Himrod, 8 N. Y. 483, 59 Am. Dec. 506. That act was to establish free schools throughout the state, and provided that the electors of the whole state should say whether the act should or should not become a law; and it was held by the Court of Appeals that this provision rendered the whole act unconstitutional, and the reasoning of that decision, it seems to me, necessarily applies to the act now under consideration. Now, this decision, although criticised by some text-writers and by judges in other states, has never been directly questioned in this state. The Court of Appeals has stated that they would not push the doctrine determined in the Barto Case beyond the point which it had decided, and those cases are referred to in the opinion of Mr. Justice SCOTT; but as I read the authorities in this state the principle established in the Barto Case has been consistently approved.

In People v. Fire Association of Philadelphia, 92 N. Y. 311, 44 Am. Rep. 380, the court, in discussing the Barto Case, said that by the act then under consideration the people were made the Legislature and left to decide whether the bill proposed should or should not become a law. The court held that the Legislature, under the Constitution, could not so delegate its power, but was bound to determine for itself the expediency of the measure and either enact or reject it; and the court then distinguished the statute then before it from the statute under consideration in the Barto Case by saying:

"But nothing in that decision denied to the Legislature the right to pass a law, whose operation might depend upon, or be affected by a future contingency."

And in Stanton v. Board of Supervisors, 191 N. Y. 428, 84 N. E. 380, the act under consideration was one submitted to the electors of a county, and that was upheld as a recognition by the Legislature that

the electors of a county had a right to select and locate their own county buildings; that there is a manifest propriety in making a change dependent upon the affirmative vote of a majority of the electors. But in neither of the laws under consideration in the cases subsequent to the Barto Case so far as my investigation has gone, was the question as to whether a law lawfully adopted by the Legislature with the approval of the Governor was repealed if a majority of the electors of a locality voted for its repeal. Therefore, unless we are prepared to reverse the Court of Appeals in the Barto Case, it seems to me that we are bound to declare such an act repugnant to the clear provisions of the Constitution.

[2] It has been suggested, however, that although this provision is void, it would leave the act as passed by the Legislature and approved by the Governor still in full force and effect; that the only portion of the act which was void would be the portion allowing the voters of the borough of the Bronx to repeal it. I think, however, in this case, that we must hold that this provision submitting the question to the people is a substantial part of the act. It appears that this bill was originally introduced in both houses of the Legislature without this provision for a vote of the electors of the borough of the Bronx, and that section 16 of the act was added by the Legislature. It may be assumed, therefore, that the Legislature would not have passed this bill in its original form, and only allowed it to become a law by adding the provision that the voters of the borough of the Bronx should have the liberty of repealing it—a provision, as I view it, which the Legislature has no power to enact, even if it should be held that the Legislature had the power to submit a bill to the locality particularly affected by it before it became a law. Care was taken to prevent this bill from being submitted to the electors of those interested.

The present county of New York includes the territory which by this bill is created the county of the Bronx. The county officers of the county of New York are elected to perform their duties over the whole territory. Their salaries are based upon the duties which are thus required to be performed, and they are authorized to appoint the necessary number of assistants to properly perform those duties, and the property in the borough of the Bronx is, under the law as it existed before the passage of this act, required to contribute its proportion to the necessary county charges in conducting the affairs of the county; but by this act the territory within the boundaries of the county of Bronx is taken from the county of New York. There is taken from the county of New York the power to tax the property within the borough of the Bronx for county purposes. It seems to me that the whole county of New York as it existed before the passage of this act had a right to vote upon the question as to whether the territory of the borough of the Bronx was to be created as a separate county; but I am willing to assume that, if the Legislature had the power to submit the question to the electors of the whole county of New York, they had the power to submit it to a portion of the electors of the county of New York, to the electors of the county of Erie, or to any other political subdivision of the state.

·My view, therefore, is that for both of the reasons 'heretofore expressed this act must be considered as a violation of the Constitution, and is therefore void, and I am therefore in favor of affirming the order appealed from.

McLAUGHLIN, J.  I concur in the opinion of Presiding Justice INGRAHAM, in so far as he holds that the effect of section 16 of the act under consideration is to render the whole act unconstitutional.

CLARKE, J., concurs.

SCOTT, J.  The relator is held by the defendant under a warrant issued out of the Court of General· Sessions.  He was convicted in that court on October 25, 1912, of the crime of murder, committed on June 6, 1912,·within the territory constituting the borough of the Bronx, and which has, as it is asserted, been constituted the county of Bronx by virtue of an act of the Legislature passed on April 19, 1912, and known as chapter 548, Laws 1912.

The relator's contention is that the effect of that act was to deprive the Court of General Sessions in the County of New York of jurisdiction to try him for the crime of which he was accused.  This question of jurisdiction can properly be raised by a writ of habeas corpus, and is the only question that can be so raised after conviction.  People v. Kaiser, 206 N. Y. 52, 99 N. E. 195. · The question of the validity of the act is therefore called directly into question and will be· first considered.  This question is an important one, which should be promptly decided, not only by reason of its relation to the rights of this relator, but also because it is one of great public consequence, since the act calls upon public officers to do certain things in the near future which it will be their duty to do if the act is valid, but not if it is invalid.

The title of the act is:

"An act to erect the county of Bronx from the territory now comprised within the limits of the borough of the Bronx, in the city of New York, as constituted by chapter 378 of the Laws of 1897 and all acts amendatory and supplemental thereto."

The erection of a new county is essentially a legislative act, and the first, and perhaps the most serious, objection to the validity of the act under consideration is that which is based upon the sixteenth section, which reads as follows:

"Sec. 16. At the general election in November, nineteen hundred and twelve, there shall be submitted to the voters of the borough of the Bronx the question, 'Shall the territory within the borough of the Bronx be erected into the county of Bronx?' If it shall appear that the majority of the votes cast on said question at said general election were against the erection of the county of Bronx, then this act shall be inoperative and void."

The Constitution of the state (article 3, § 1) provides that:

"The legislative power of the state shall be vested in the Senate and Assembly."

And the argument against the validity of the Bronx County Act is that by its sixteenth section, quoted above, the Legislature relinquished its constitutional power and duty, and has delegated to the people of the territory proposed to be embraced in the new county the determination of a question which by the Constitution has been committed to the Legislature alone. The question how far, and in what cases, the Legislature may make a statute contingent on approval by a vote of the people, is one which has been much discussed by the courts and by writers of text-books, and cannot as yet be said to have been generally agreed upon. Some point has been made as to the form of the question to be submitted to the people in the present case; but I consider that, so far as it concerns the power of the Legislature, it is immaterial. The point is that it is left to the people to determine by their votes whether or not the act shall be effective.

One of the earliest cases dealing with this question was Barto v. Himrod, 8 N. Y. 483, 59 Am. Dec. 506. That case dealt with an act of the Legislature of this state entitled "An act establishing free schools throughout the state," and provided that the electors of the whole state should say whether "this act shall or shall not become a law." It was held that the statute had not been constitutionally enacted. After quoting the provisions of the Constitution imparting all legislative power to the Senate and Assembly, and noting the single case in which the Constitution itself had provided for a reference to the people, the court said:

"The exercise of this power by the people in other cases is not expressly and in terms prohibited by the Constitution; but it is forbidden by necessary and unavoidable implication. The Senate and Assembly are the only bodies of men clothed with the power of general legislation. They possess the entire power, with the exception above stated. The people reserved no part of it to themselves, except in regard to laws creating a public debt, and can, therefore, exercise it in no other case."

After referring to some features of the act, the court proceeded:

"It results, therefore, unavoidably from the terms of the act itself that it was the popular vote which made the law. The Legislature prepared the plan or project, and submitted it to the people to be passed or rejected. The Legislature had no power to make submission, nor had the people the power to bind each other by acting upon it. They voluntarily surrendered that power when they adopted the Constitution. * * * It is not denied that a valid statute may be passed, to take effect upon the happening of some future event, certain or uncertain; but such a statute, when it comes from the hands of the Legislature, must be law in præsenti, to take effect in futuro. * * * But if by the terms of the act it had been declared to be the law from the time of its passage, to take effect in case it should receive a majority of votes in its favor, it would nevertheless have been invalid, because the result of the popular vote upon the expediency of the law is not such a future event as the statute can be made to take effect upon, according to the meaning and intent of the Constitution."

This case stands to-day as a binding authority upon the precise question which it decided, and its reasoning is, in fact, generally followed throughout the country, in so far as concerns general statutes made to be dependent upon the popular vote of all the electors of the state, although very eminent jurists, such as Judge Redfield and Judge

Cooley, have expressed dissent from its reasoning. State v. Parker, 26 Vt. 357; Cooley's Const. Lim. (7th Ed.) p. 167 et seq. It has, however, been followed by a majority of the justices comprising the Supreme Court in Massachusetts. In re Opinion of the Justices, 160 Mass. 586, 36 N. E. 488, 23 L. R. A. 113.

The language used in Barto v. Himrod was sufficiently strong to invalidate any attempt on the part of the Legislature to submit to the people the question whether any proposed act should or should not go into effect. It soon began to be limited, however, to the precise question decided; the Court of Appeals saying in People v. Fire Association of Philadelphia, 92 N. Y. 311–318 (44 Am. Rep. 380):

> "This court has steadily declined to push the doctrine of Barto v. Himrod beyond the point which it decided."

Acts were passed authorizing certain towns and villages to incur obligations in behalf of projected railroads; the question whether they should or should not incur such obligations being left to the determination of the electors, or local authorities of the several municipalities. These acts were easily distinguished from Barto v. Himrod, on the ground that the acts themselves took effect and became law solely by act of the Legislature, which did no more than to leave it to the determination of the parties interested whether or not they would bring themselves within the law. Bank of Rome v. Village of Rome, 18 N. Y. 38; Starin v. Town of Genoa, 23 N. Y. 439; Clarke v. City of Rochester, 28 N. Y. 605.

In People v. Fire Association of Philadelphia, 92 N. Y. at page 317, 44 Am. Rep. 380, the court explained what it understood to have been the specific point decided in Barto v. Himrod. Speaking of that case it said:

> "What was then denominated the School Law came from the hands of the Legislature, not as a law, but as a proposition. Whether it should be a law or not was precisely the question submitted to the popular vote. The Legislature proposed the law, but left it to the people to enact. The process, carried out and applied to all bills, would have resulted in a complete abdication by the Senate and Assembly of their authority and function. Instead of making laws, they would simply have suggested them, reported them for consideration, but left the judgment upon them—the determination of their expediency and wisdom—to an authority outside their own. As to the School Law, the people were made the Legislature, and left to decide whether the bill proposed should or should not become a law. This court held that the Legislature, under the Constitution, could not so delegate its power, but it was bound to determine for itself the expediency of the measure and either enact or reject it. But nothing in that decision denied to the Legislature the right to pass a law whose operation might depend upon, or be affected by, a future contingency. The opinions expressly conceded the existence of this power. It was not denied that a valid statute may be passed to take effect upon the happening of some future event, certain or uncertain."

Later cases in the Court of Appeals have discussed Barto v. Himrod along the same lines as in those already cited. It will be necessary to refer here to only one, and that the latest expression of the court upon the subject. The act under consideration was one requiring the question of the removal of a county seat and county buildings in the county of Essex to be submitted to the electors of the

county. The validity of the act was challenged upon the ground that it involved an unconstitutional delegation of the power of the Legislature. The court referred to and discussed Barto v. Himrod and the other cases hereinbefore referred to. It pointed out the fact that the Legislature possessed very wide powers, some not strictly legislative, but covering all departments of the government, including the administrative and executive, and, as well, in a limited sense, the judicial department. As to the latter class of powers, it quoted Chief Justice Marshall in Wayman v. Southard, 10 Wheat. 1–42 (6 L. Ed. 253), in which he said:

"It will not be contended that Congress can delegate to the courts or any other tribunal powers which are strictly and exclusively legislative; but Congress may certainly delegate to others powers which the Legislature may rightfully exercise itself"

—citing as illustrative the power of the Congress either to itself prescribe rules of procedure in judicial actions or to leave the power to make such rules to the courts. The Court of Appeals then said:

"But, while general statutes must be enacted by the Legislature, it is plain the power to make local regulations having the force of law in limited localities may be committed to other bodies representing the people in their local divisions, or to the people of those districts themselves. Our whole system of local government in cities, villages, counties, and towns depends upon that distinction. The practice has existed from the foundation of the state, and has always been considered a prominent feature in the American system of government. It is recognized in the Constitution itself, in that section which prescribes to the Legislature the duty to provide for the organization of cities and incorporated villages, etc., restricting their power of taxation and borrowing. We have thus distinctly presented the differences between enactments pertaining to the whole state and those pertaining to localities, and such distinction is not left to those which are local or general laws; for general laws may be, and in certain cases must be, enacted which pertain to localities only. * * * While it may not be necessary, the Legislature has generally recognized the right of the electors of a county to select and locate their own county buildings. They, of all persons, can best determine the place that would be most accessible and convenient for the transaction of the business of a county. There is, therefore, a manifest propriety in making a change dependent upon the affirmative vote of a majority of the electors." Stanton v. Board of Supervisors, 191 N. Y. 428, 84 N. E. 380.

The question whether or not, and under what circumstances, the Legislature may lawfully commit to the determination of the electors the question whether an act shall become operative, has been considered in innumerable cases in other jurisdictions. The general rule to be deduced from the decisions of our own state, and from the best considered decisions in other states, appears to be that the Legislature may not lawfully so submit a mere proposition for a law, or a statute affecting the whole state and establishing the general policy of the state, but that it may lawfully so submit statutes, whether local or general in form, which affect only the people of a separate district, locality, or municipal corporation, and as to the desirability of which the people of the locality are best able to judge. This is subject to the condition that the statute when it leaves the Legislature must be a complete act, ready to go into full operation when accepted by the electors of the district to be affected, to whom is submitted

only the question whether or not the act as framed by the Legislature shall become operative.

In my opinion, the act under consideration falls within the class of laws which may constitutionally be submitted for acceptance or rejection by the people of the territory proposed to be erected into a county. It directly affects only the people of that territory. Upon them is to fall the increased burden imposed by the act, and to them will accrue the advantages, if any, attendant upon the establishment of a separate county government. The Legislature has the undoubted right under our Constitution to erect a new county without consulting the wishes of the persons most directly interested; but it is not unreasonable, and not, I think, an abdication of legislative duty and power, to consult the preference of the persons directly interested.

It is not unreasonable that the Legislature should be unwilling to impose added burdens upon the residents of a particular district, or, on the other hand, to withhold supposed benefits, except with the consent of those to be affected. The precise question has not heretofore arisen in this state, but the solution at which I have arrived is not only in harmony with the trend of decisions in this state, but is the rule that has been universally applied in other states where the precise question has arisen. People v. McFadden, 81 Cal. 489, 22 Pac. 851, 15 Am. St. Rep. 66; People v. Nally, 49 Cal. 478; Erlinger v. Boneau, 51 Ill. 94; People v. Salomon, 51 Ill. 37; People v. Reynolds, 10 Ill. (5 Gilm.) 1; State v. Elwood, 11 Wis. 17.

It has been suggested that the reference should have been to the electors of the whole county of New York, out of which the new county is to be carved. I am unable to see that the electors of that part of New York county not set apart have any interest in the question whether or not the borough of the Bronx shall be elected into a separate county, or at least any interest that is comparable to that which the electors of the Bronx may be presumed to have. At all events, the determination whether the matter should or should not be referred to popular vote, and, if so referred, to whom the reference should be made, was one which rested alone in the discretion of the Legislature, which we have no power to review. Assuming, then, that the act was not rendered invalid by the reference to a vote of the electors contained in its sixteenth clause, there are still other questions to be considered, depending upon when the act became or will become fully operative.

The first section of the act provides that the territory now comprising the borough of the Bronx—

"is hereby set off from the county of New York and is erected into the county of Bronx as a separate and distinct county of the state of New York from and after the date of taking effect of this act."

And the last section provides that:

"This act shall take effect immediately."

The act provides for an election of county officers in November, 1913, who are to take office on January 1, 1914, and further provides that:

"In the meantime in order that no existing rights may be prejudiced and to prevent an interregnum the county officers of New York county shall continue to have their present jurisdiction, powers and duties in the territory within the county of Bronx until the first day of January, 1914, except as herein otherwise provided."

The objection to the act based upon these clauses is that creating the county to become such at once, and providing that the officers of other counties shall continue to have jurisdiction therein, is equivalent to an appointment by the Legislature of county officers who are required by the Constitution to be chosen by the electors.  In my opinion this objection is not tenable.  It is impossible in the nature of things that a new county can be created, ready equipped with the necessary county government.  Some time must necessarily elapse before the erection of territory into a new county, and the election and qualification of the constitutional officers and courts to carry on its business.  In such a case the county is created as a geographical division on the passage of the act erecting it, but does not become a county for political and administrative purposes until its officers have been selected and have qualified.  Otherwise there would be an interregnum, during which there would be no county government.  The rule in such cases is that the erection of the new county by the division of an old county does no more than provide for the organization of such counties, and until the new county is actually organized and its officers qualified the territory remains subject to the jurisdiction of the old county.  Meehan v. Zeh, 77 Minn. 63, 79 N. W. 655; Clark v. Goss, 12 Tex. 395, 62 Am. Dec. 531; O'Shea v. Twohig, 9 Tex. 336; Milk v. Kent, 60 Ind. 226.  See, also, Nassau County v. Phipps, 43 App. Div. 595, 60 N. Y. Supp. 249.  In such a case the county officers of the old county exercise jurisdiction over the territory comprising the new county, not as officers of the new county, but because their original authority over the territory is preserved until the officers of the new county are properly selected.  Obviously it was this result that the draftsman of the Bronx County Act intended to effect by the inclusion of the sentences quoted from the fifth section of the act.

The act is not a "special city law," and consequently was not one which should have been submitted to the mayor of the city of New York.  McGrath v. Grout, 171 N. Y. 7, 63 N. E. 547.  I am therefore of the opinion that the act under consideration is valid and free from constitutional objection.

It remains to consider the relator's contention that, assuming the act to be valid, the Court of General Sessions was without jurisdiction after its passage to try persons accused of crimes committed within the territory set apart to form Bronx county.  The Legislature has attempted, and as I think successfully, to preserve to the Court of General Sessions, and other courts now established within the county of New York, jurisdiction until January 1, 1914, over all matters, civil and criminal, arising within the confines of

139 N.Y.S.—58

Bronx county that they had before the passage of the act. The ninth section of the act reads as follows:

"From and after the time of the taking effect of this act the Supreme Court, and on and after the first day of January, nineteen hundred and fourteen, the County Courts shall have jurisdiction over all crimes and misdemeanors committed within the territory of the county of Bronx, except as herein otherwise provided; within the county of Bronx the Courts of Special Sessions and Magistrates' Courts as now constituted by law shall have jurisdiction of such offenses as may be tried and determined by such Courts of Special Sessions and by such Magistrates' Courts as now constituted under and by virtue of chapter three hundred and seventy-eight of the Laws of eighteen hundred and ninety-seven, and all acts amendatory thereof and supplemental thereto, the same as if this act had not been passed: Provided, however, that the several courts within the county of New York and within the First judicial district of the Supreme Court of the state of New York shall have and retain jurisdiction of all actions, proceedings and matters that shall have been rightfully commenced in said courts prior to the said first day of January, nineteen hundred and fourteen, and the several courts of the county of Bronx having criminal jurisdiction on and after the first day of January, nineteen hundred and fourteen, shall have the same jurisdiction of crimes, offenses and misdemeanors that shall have been committed in the said territory that the courts of the county of New York having criminal jurisdiction now have in the county of New York, provided proceedings shall not have been already rightfully commenced in any of the courts of the county of New York for the prosecution of the said crimes, offenses and misdemeanors, in which case, the said courts within the county of New York shall have and retain jurisdiction of the same for the full, complete and final disposition thereof, and until the said first day of January, nineteen hundred and fourteen, the said courts of the county of New York, and in the said First judicial district, shall retain and exercise in all civil and criminal proceedings the same jurisdiction they now have."

Much that has already been said as to the preservation of the jurisdiction and authority of county officers applies with equal force to the preservation of the jurisdiction of the local courts of the county.

Reading the act as a whole, it is not difficult to find in it an intention on the part of the Legislature that parts of the act shall not become operative until January 1, 1914, notwithstanding the act itself is declared to take effect immediately upon its passage. That means no more than it becomes a part of the statute law of the state on the day of its passage. When its various provisions are to become operative must be ascertained from the body of the act itself. There is no constitutional reason why the Legislature may not enact that different parts of the same statute shall take effect at different times, and this is precisely what the Legislature has done in the present case. The clear intent of the statute is that the jurisdiction of the Court of General Sessions to try indictments for offenses committed within the city and the old county of New York shall continue unimpaired until January 1, 1914, when a County Court is to be established in Bronx county, which will thereafter have jurisdiction over crimes committed in that territory and as to which proceedings have not then been rightfully commenced in the county of New York. I see nothing ambiguous

about this provision, and nothing that is beyond the constitutional power of the Legislature to enact.

It follows that the order appealed from should be affirmed.

DOWLING, J., concurs.