OPINION OF THE COURT
Dominic R. Massaro, J.
The captioned defendants have been charged in separate indictments with serious criminal offenses pursuant to various sections of the Penal Law. Respectively, each seeks to dismiss the indictment against him based upon improper venue. On this issue, the court consolidates their prayers.
The gravamen of these complaints is that said indictments incorrectly charge the commission of crimes in "the County of The Bronx” (emphasis added). Defendants present a novel question. They quite correctly maintain — following a spirited exchange with the People in moving and answering papers and the advancing of expert opinion — that there is no county designated by this name in New York State. Notwithstanding, venue lies and the motions are denied.
COUNTY VERSUS BOROUGH
The local governments of our State are comprised of counties, cities, towns and villages. Counties and towns, in contrast to cities and villages, have traditionally been regarded as subdivisions of the State. The power to erect a county and prescribe its boundary has been the exclusive province of the Legislature from the initiation of State government in 1777 (see, NY Const, art IX, § 1 [1963]; Municipal Home Rule Law § 1 et seq.).
Since 1914, New York has been divided into 62 counties. Bronx County is the sixty-second and last county to achieve this status (see, County Law § 900). Five of the 62 counties (that is, New York, Kings, Queens, Richmond and Bronx) are merged with the City of New York. Historical oddities aside— Marble Hill, located in the Borough of Manhattan but of the County of Bronx (see, People v Boyd, NYLJ, May 31, 1984 at 7, col 3 [Sup Ct, NY County]) — the five boroughs of the City are coterminous with the five counties.
Because this is so, the Legislature has delegated to the City of New York various responsibilities that generally are delegated to counties throughout the remainder of the State. It is *735 for this reason that these five contiguous counties are relatively insignificant as units of public administration — much to the chagrin of their respective borough presidents, who, it is advanced in some quarters, otherwise could more directly treat with a myriad of social problems affecting the citizenry as fully empowered county executives.[1] The five counties within the City of New York are thus less than fully ennobled governmental entities, the prominent entity being the corporate City, which enjoys the peculiar public incident of "home rule”. Nevertheless, counties, even within the City, continue to have legal significance in a limited number of instances.
In the realm of the judiciary, for instance, the First Judicial District is coextensive with the County of New York; the Second Judicial District is comprised of the Counties of Kings and Richmond; the Eleventh Judicial District is coextensive with Queens County; and the Twelfth Judicial District, created in 1981, coincides with the County of Bronx (see, Judiciary Law § 140).
It follows that a defendant ordinarily must be prosecuted in the appropriate court of "the county” where the crime is alleged to have been committed (CPL 20.40). "In each county a [prosecuting] district attorney shall be chosen by the electors” (NY Const, art XIII, § 13 [a]). Respecting indictment for a crime by a Grand Jury, "prospective grand jurors shall be drawn * * * from the list * * * of persons qualified as jurors in the county” (Judiciary Law § 514).[2] Respecting trial, a trial juror must be "a resident of the county” in which he serves (Judiciary Law § 510). The Justice presiding "shall be chosen by the electors of the judicial district”, that is, the county or counties in which he or she shall serve (NY Const, art VI, § 6 M).
THE COUNTIES OF NEW YORK
In 1683, the colonial authorities enacted that the province of New York be divided into 12 counties: to wit, Albany, *736 Cornwall, Dukes, Kings, New York, Orange, Queens, Richmond, Suffolk, Dutchess, Ulster and Westchester (Colonial Laws of NY, vol 1, at 121 [1891]).
Following the War of the Revolution, the new State Legislature passed "An Act for dividing this State into counties” (L 1788, ch 63), dividing the State into 16 counties. By 1801, the State had grown to 30 counties (L 1801, ch 123). The Revised Laws of 1813 expanded this number to 47 (L 1813, ch 39). By 1829, the number had grown to 56 (Rev Stat of NY, part I, ch II, tit I, § 1).
The geography that presently is known as "The Bronx”[3] was originally a part of the County of Westchester.
On January 1, 1874, by an act of the Legislature, "[a]ll that territory now comprised within the limits of the towns of Morrisania, West Farms and Kings Bridge, in the county of Westchester * * * is hereby set off from the county of Westchester, and annexed to, merged in and made part of the city and county of New York” (L 1873, ch 613). That portion of the Bronx community annexed to the City in 1874 — lands west of the Bronx River — was designated as the 23rd and 24th Wards (see generally, 1 Wells et al., The Bronx and its People: A History 1609-1927, at 384 et seq. [1927]). In 1895, additional towns within the County of Westchester, the Town of Westchester and the lower parts of the Towns of Eastchester and Pelham — lands east of the Bronx River — were annexed to and made a part of the City and County of New York (L 1895, ch 934; see generally, Shonnard & Spooner, The History of Westchester County, New York 621 et seq. [1900]).
*737 In 1897, the Legislature passed an act "to unite into one municipality under the corporate name of The City of New York, the various communities lying in and about New York harbor” (L 1897, ch 378). Pursuant to this act, the territories embraced within the annexations to the City and County of New York in 1874 and 1895 became the "borough of The Bronx” on January 1, 1898. Thus, The Bronx was born![4]
THE BRONX COMES OF AGE
Though The Bronx emerged as a borough in 1898, it still remained a part of New York County. Indeed, "[u]p to April 19, 1912, The Bronx was the only one of the five boroughs comprising the City of New York that was not a separate and distinct county. On that date an act was passed in the Legislature creating the County of Bronx, subject to a referendum to the voters of the Borough. The question 'Shall the territory within the Borough of The Bronx be erected into the County of Bronx?’ was accordingly submitted to the voters at the general election in November, 1912, and a majority of the votes cast were in favor of the creation of the county” (Cook, The Borough of The Bronx 1639-1913, at 32 [1913]).
This 1912 legislation, enacted "to erect the county of Bronx from the territory now comprised within the limits of the borough of [The] Bronx” (L 1912, ch 548) and the positive results of the referendum thereon brought about the creation of Bronx County as a separate and distinct county of the State on January 1, 1914 (see, County Law § 900 [2]).
A careful reading of the foregoing reveals the county name to be "Bronx” while the borough name is "The Bronx.”[5] Thus is confronted the question of whether an indictment charging a crime in the "County of The Bronx [sic]” is geographically erroneous and, therefore, defective and subject to dismissal.
*738 PURPOSE OF INDICTMENT
An indictment serves to satisfy the notice requirements of the Federal and State Constitutions (see, People v Iannone, 45 NY2d 589 [1978]; see, US Const 6th Amend; NY Const, art I, § 6). One of its essential functions, therefore, is to provide a defendant with sufficient information regarding the nature of the charge and the conduct underlying the allegations to allow him to prepare a defense (see, People v Morris, 61 NY2d 290 [1984]).
To satisfy the statutory notice requirement, the Criminal Procedure Law sets forth objectives by which the sufficiency of an indictment may be tested. Among others, it must contain "[a] plain and concise factual statement in each count which * * * asserts facts supporting every element of the offense charged and the defendant’s * * * commission thereof with sufficient precision to clearly apprise the defendant * * * of the conduct which is the subject of the accusation” (CPL 200.50 [7] [a]). In short, an "indictment need only allege where, when and what the defendant did” (Pitler, New York Criminal Practice Under the CPL § 6.21, at 302). As to the "where”, the indictment must specify "a designated county” in which the offense(s) charged was committed (CPL 200.50 [5]; cf., People v Puig, 85 Misc 2d 228 [1976]).
Failure to comport these objectives with statutory requirements may well result in dismissal of an indictment (see, CPL 210.25). Not all defects, however, mandate such dismissal (see, People v Iannone, supra; see also, People v Fitzgerald, 45 NY2d 574 [1978]). The standard is one of reasonableness; "[Reasonable certainty, all will agree, is required in criminal pleading” (United States v Cruikshank, 92 US 542, 568 [1875]; see also, People v Bogdanoff, 254 NY 16 [1930]).
Under this standard, courts have hesitated to dismiss indictments where the defect is technical or insignificant, and where the constitutionally mandated notice requirements have been met. Thus, it has been held that the lack of a precise date is not a fatal defect if it is not a substantive element of the crime charged (see, People v Morris, supra; People v Jones, 129 App Div 772 [4th Dept 1909]).
Similarly, an indictment that failed to mention the defendant’s name or gender within its body was held not to be fatally defective (see, People v Brothers, 66 AD2d 954 [3d Dept 1978]). Likewise, a failure on the part of a District Attorney to execute an indictment was held to be a requirement which *739 could be disregarded (see, People v Sanchez, 144 Misc 2d 262 [Sup Ct, Bronx County 1989]; see also, People v Miller, 75 Misc 2d 1 [Dutchess County Ct 1973]). Indeed, it has been well stated that "State law, in this instance affording greater flexibility in the accusatory process, does not favor the dismissal of indictments for technical defects in the absence of a showing of fraud or prejudice to the defendant” (People v Heller, 122 Misc 2d 991, 997 [Sup Ct, Kings County 1984], citing People v White, 44 AD2d 749 [1974], affd 40 NY2d 876 [1976]; see also, People v Baker, 75 AD2d 966 [3d Dept 1980]; Matter of Seidenberg v County Ct. of County of Rockland, 34 NY2d 499 [1974]).
CONCLUSION
Is The Bronx, the Bronx? Legally, the answer is "no”. So accepted the juxtaposition of county with borough has become, however, the herein defendants would be straining credulity in entertaining the thought that The Bronx is located anywhere but in the County of Bronx.[6] Clearly, the cited defect is technical in nature. Our Court of Appeals has reaffirmed the principle that courts are authorized "to dispense with hyper-technical or strained interpretations of [a] statute” (People v Ditta, 52 NY2d 657, 660 [1981]). Statutes must be construed "according to the fair import of their terms and to promote justice” (Penal Law § 5.00).
The issue of venue relates to whether a criminal charge is brought in the proper county within the State (CPL 20.40). Such is the case here. The charges preferred are loco citato, and The Bronx is locus in quo. Moreover, no showing of fraud or prejudice to these defendants has otherwise been made out (see, People v Peck, 96 NY 650 [1884]); indeed, the People still bear the burden of proving a geographical nexus by a preponderance of the evidence at trial. In light of the sufficiency of *740 the factual allegations contained in each indictment, the defect(s) is not of the moment (see, People v Parkinson, 181 Misc 603 [1943]).
Notwithstanding, the better practice would be for the People to amend each indictment, accordingly. They are afforded leave to do so orally on the next court appearance date(s). To rule otherwise would be patently absurd,[7] especially in view of the fact that dismissals herein would set a precedent for the dismissal of every indictment presently before this court, as well as those of recent memory voted in the County of Bronx. Arguably, each improperly sets forth "the County of The Bronx” as the place the crime(s) was committed. The law is not "a ass”![8]

. "Poor people know poor people, and rich people know rich people. It is one of the few things La Rochefoucauld did not say, but then La Rochefoucauld never lived in the Bronx.” (Moss Hart, Act One [1959].)

. Interestingly, it was found subsequent to the enactment of legislation in 1912 erecting the County of Bronx that "[no act] could confer jurisdiction on a grand jury of New York county to indict a person for a crime committed in the borough of [The] Bronx after that county was duly created and existing as a separate and independent county of the State.” (People ex rel. Unger v Kennedy, 154 App Div 558, 562, affd 207 NY 533 [1913].)

. There is a popular explanation for "The” Bronx. According to the story, visitors to Jonas Bronck’s farm would supposedly say they were "going to the Bronck’s.” (See, "Why 'the Bronx?’ ”, NY Times, Apr. 18, 1993, section 10, at 7.) While humorous, the tale is not supported by historical evidence. Bronck, the first settler north of what is today Manhattan, only resided at his farm from the time of his purchase from the Mohegan sachems in 1639 to 1643. Following his death and the prompt remarriage of his widow to Arendt van Cutler, there were no more Broncks in The Bronx.
"[I]n 1641, Jonas Bronck made a purchase of five hundred acres of land between the Harlem and Aquahung rivers. The latter soon lost its Indian name and became known after the proprietor as Bronck’s River; today, the Bronx, a natural derivative from 'Bronck’s’ has given its name to the Borough.” (Jenkins, The Story of The Bronx 26 [1912].) (See also, Ultan, Jonas Bronck and the First Settlement of The Bronx, in The Bronx County Historical Society Journal XXVI, 2, at 53 [fall 1989], citing at note 26, Documents Relative to the Colonial History of the State of New York XIII, 5; trans at New York Historical Manuscripts: Dutch I 196-197; Lamb, History of the City of New York, I, at 80, n 1 [1877].)

. " 'The Bronx’
"No Thonx!” (Ogden Nash [c 1950].)
"I wrote those lines, 'The Bronx? No Thonx!’ And I shudder to confess them.
"Now I am an older, wiser man I cry, 'The Bronx? God Bless them!’ ” (Ogden Nash [1964].)
Just as Bronx Community College successfully challenged the versifier on his depiction of the borough during its Golden Jubilee as a county (1914-1964), Bronxites have always enjoyed a peculiar history of pride in a location distinguished by a definite article. Witness: "There are three places in the world entitled to the prefix 'The’: The Hague, The Vatican and The Bronx” — Entryway sign, II Boschetto Restaurant, Bronx, New York.

. "What’s in a name? that which we call a rose
"By any other name would smell as sweet.” (Shakespeare, Romeo and Juliet [1598].)

. The testimony of Professor Lloyd Ultan, an expert on Bronx history, makes this point rather succinctly:
By the defense:
"Q. Professor, could you please tell us what county we are currently in?
"A. The County of Bronx.
"Q. What is the correct name of the county?
"A. Bronx.”
By the People:
"Q. Sir, when you, in your books * * * refer to The Bronx, where would you go, what location?
"A. Exactly where we are now.”

. See, McKinney’s Cons Laws of NY, Book 1, Statutes § 145.

. " 'If the law supposed that,’ said Mr. Bumble . . . 'the law is a ass’.” (Dickens, Pickwick Papers [1836-1837].)